UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| THOMAS OSTROWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:18-cv-00423-TLS |
| | ) | |
| LAKE COUNTY, INDIANA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Kenneth J. Yerkes
Bart Karwath
Jackie S. Gessner
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:     (317) 236-1313
Facsimile:     (317) 231-7433
E-mail:          ken.yerkes@btlaw.com
                     bart.karwath@btlaw.com
                     jackie.gessner@btlaw.com

*Counsel for Defendants*

# Table of Contents

**Page**

Table of Authorities ................................................................................................................ iii

I.      Introduction. ........................................................................................................... 1

II.     Statement Of Material Facts. .................................................................................. 2

        A.      The Lake County Retirement Plan ............................................................... 2

                1.      Normal Retirement Benefits Based On Age And Years Of Service. ............... 3

                2.      Limited Benefits Available When A Member Severs Employment Prior To Retirement. ........................................................................ 4

                3.      Disability Retirement Benefits When An Officer's Employment Ends Due To A Disability. ......................................................... 5

                4.      Options For Passing Retirement Benefits To Survivors Upon Death. ........... 5

        B.      The Lake County Benefit Plan For Disabled Officers .................................... 6

                1.      Disability Benefits For Disabled Officers Under The Benefit Plan. ............... 7

                2.      Additional Benefits Afforded Disabled Officers Under The Benefit Plan. ..... 7

                3.      Options For Passing Disability Benefits To Survivors Upon Death. ............. 8

                4.      Additional Dependent Benefit Available Under The Benefit Plan. ............... 8

        C.      Plaintiff's Employment and May 2003 Retirement From The Lake County Sheriff's Department. ................................................................... 8

        D.      Plaintiff's Efforts To Pursue A COLA For Disability Benefits .................... 10

        E.      Plaintiff's Release Of All Claims In A Prior Lawsuit. ............................... 12

III.    Discussion. ............................................................................................................ 12

        A.      Legal Standard ........................................................................................... 12

        B.      Plaintiff's ADA Claim Fails As A Matter Of Law. ..................................... 13

C.   Plaintiff's Equal Protection Claim Fails. ..........................................................15

1.   Plaintiff Is Not Similarly Situated To Those Who Receive A COLA.............16

2.   Rational Bases Justify The Difference Between Benefits Offered
Under The Retirement Plan And The Benefit Plan.............................................21

D.   Plaintiff's Indiana Statutory Claim Must Be Dismissed. ....................................30

1.   The Statute Does Not Provide A Private Right Of Action.............................30

2.   The Disability Benefit Is Reasonable. ..........................................................31

E.   Plaintiff's Claims Are Barred By The Terms Of His Valid Release Agreement. ........32

F.   Plaintiff Is Not Entitled To Injunctive Relief. ....................................................34

IV.   Conclusion.......................................................................................................................34

Certificate of Service..........................................................................................................35

## Table of Authorities

***Cases***

*Caldwell v. Klemz,*
No. 2:14-CV-455, 2017 WL 4620693 (N.D. Ind. Oct. 12, 2017)................................................31

*Carson v. Lake Cty.,*
No. 2:14-CV-117-PRC, 2016 WL 4798965 (N.D. Ind. Sept. 14, 2016),
*aff'd sub nom. Carson v. Lake Cty., Indiana*, 865 F.3d 526 (7th Cir. 2017) ....................................13

*Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund,*
937 F.2d 752 (2d Cir. 1991) ................................................................................................ 28, 29

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................................ 12, 13

*Clark v. United States,*
691 F.2d 837 (7th Cir. 1982) ......................................................................................................29

*Dandridge v. Williams,*
397 U.S. 471 (1970) ............................................................................................................ 16, 30

*Desris v. City of Kenosha, Wis.,*
687 F.2d 1117 (7th Cir. 1982)............................................................................................. 16, 17

*E.E.O.C. v. CNA Ins. Companies,*
96 F.3d 1039 (7th Cir. 1996)......................................................................................................14

*Erwin v. Nw. Mut. Life Ins. Co.,*
999 F. Supp. 1227 (S.D. Ind. 1998) ..........................................................................................14

*F.C.C. v. Beach Commc'ns, Inc.,*
508 U.S. 307 (1993)....................................................................................................... 16, 21, 22

*Fair v. Int'l Flavors & Fragrances, Inc.,*
905 F.2d 1114 (7th Cir. 1990)....................................................................................................32

*Freeman v. Agricor, Inc.,*
No. 1:09-CV-160, 2009 WL 2611761 (N.D. Ind. Aug. 24, 2009) ....................................... 32, 33

*Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,*
315 F.3d 817 (7th Cir. 2003)......................................................................................................13

*Holland v. Methodist Hosps.,*
No. 2:14-CV-88-PRC, 2016 WL 5724355 (N.D. Ind. Sept. 30, 2016) ......................................13

*Irizarry v. Bd. of Educ. of City of Chicago,*
251 F.3d 604 (7th Cir. 2001)......................................................................................................28

*Kralemann v. Police Retirement System of the City of St. Louis,*
No. 89-1465-C-7 (E.D. Mo. Nov. 22, 1993) (J. Hamilton),
*aff'd* No. 94-1115, 1994 WL 578204 (8th Cir. Oct. 20, 1994) ........................17, 18, 28

*Mathews v. City of S. Bend,*
No. 3:10-CV-390, 2013 WL 2149482 (N.D. Ind. May 16, 2013)...............................15

*Mikulich v. Lake Cty.,*
96 N.E.3d 666 (Ind. Ct. App. 2018).........................................................................31

*Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. &*
*Am. Fed'n of Grain Millers, AFL-CIO-CLC,*
268 F.3d 456 (7th Cir. 2001)..........................................................................14, 15, 25

*Nehan v. Tootsie Roll Indus., Inc.,*
621 F. App'x 847 (7th Cir. 2015) .............................................................................12

*Nordlinger v. Hahn,*
505 U.S. 1 (1992) .................................................................................................21, 22

*Oriental Health Spa v. City of Fort Wayne,*
864 F.2d 486 (7th Cir. 1988)...................................................................................16, 21

*Ostrowski v. Lake County et al.,*
Case No. 2:16-cv-00166 (N.D. Ind. filed May 12, 2016)......................................12, 33

*Payne v. Pauley,*
337 F.3d 767 (7th Cir. 2003) ....................................................................................13

*Shirey v. Flenar,*
89 N.E.3d 1102 (Ind. Ct. App. 2017)........................................................................30

*Steinker v. EnovaPremier, LLC,*
No. 3:11-CV-010-RLY-WGH, 2012 WL 3597392 (S.D. Ind. Aug. 20, 2012).........14

*Thurston v. Borden Waste-Away Serv., Inc.,*
No. 3:96-CV-674RP, 1998 WL 456441 (N.D. Ind. May 19, 1998)...........................15

*Tigner v. Texas,*
310 U.S. 141 (1940) ..................................................................................................16

## **Statutes**

42 U.S.C. § 12111(2) ...................................................................................................14

42 U.S.C. § 12111(8) ..............................................................................................14, 15

42 U.S.C. § 12112(a) ...................................................................................................13

Indiana Code § 36-8-10-11 ................................................................................................ 30

Indiana Code § 36-8-10-15 ............................................................................................ 30, 31

### ***Rules***

Federal Rule of Civil Procedure 56 ..................................................................................... 2

Federal Rule of Civil Procedure 56(a) ............................................................................... 12

I.      **Introduction.**

Plaintiff Thomas Ostrowski is a former patrol officer with the Lake County Sheriff's Department ("Department").  He left employment 17 years ago due to a back injury incurred during a training exercise that eventually resulted in him becoming disabled.   The Department offers certain benefits to its officers under two separate and distinct plans:  a Retirement Plan and a separate Benefit Plan.

As a disabled former officer, Plaintiff has received certain benefits under both plans.  Under the Department's Benefit Plan, Plaintiff has received and continues to receive a monthly disability benefit which will continue for his lifetime, reimbursements for out-of-pocket medical expenses related to his disability, and life insurance benefits, among other benefits.  Plaintiff also received a separate disability retirement benefit under the Retirement Plan.  Now, having received all of these benefits for years, Plaintiff brings this action challenging the Department's benefits.  Plaintiff demands that a cost of living adjustment ("COLA") be applied to his monthly disability benefit because a COLA is added in very limited circumstances to the monthly retirement benefits of certain other retirees and beneficiaries.  Specifically, Plaintiff alleges that the Department must provide a COLA to disabled retirees' benefits or to none at all, lest it violate the Americans with Disabilities Act, the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution, and an Indiana statute regarding retirement benefits that specifies such benefits are to be reasonable.

Plaintiff asks the Court to ignore the many immediate and significant benefits he and others who are disabled in the line of duty receive – benefits that are rationally related to caring for those who are injured while serving the public.   Indeed, Plaintiff asks the Court to determine that the extraordinary financial benefits to which he is entitled (and to which others are not) are not enough, while at the same time award him the COLA benefit certain others had to work at least 20 years or until the age of 60 to receive.   The law does not demand the type of exacting equality that Plaintiff

seeks, and rational bases exist for the differences in benefits between the differently situated retired officers and beneficiaries. As discussed in greater detail below, based on the undisputed facts and the law, the Court should deny Plaintiff's motion for partial summary judgment and enter summary judgment in favor of Defendants on all of Plaintiff's claims.

## II.     Statement Of Material Facts. [1]

### A.     The Lake County Retirement Plan.

The Department provides pension benefits to Department employees upon their retirement. [Doc. 44-3 pages 5-49 (Dilts Dep. Ex. 2); Doc. 44-2 page 4 (Dilts Dep. 14:6-10)]. All Lake County Policemen and Sheriffs with full police powers employed by the Department are eligible for such benefits. [Doc. 44-3 pages 11, 21 (Dilts Dep. Ex. 2 at 3, 13)]. The terms and provisions governing pension benefits are set forth in the Lake County Police Retirement Plan ("Retirement Plan"). [Doc. 44-3 pages 5-49 (Dilts Dep. Ex. 2); Dilts Decl., Ex. A, ¶ 6].

Pension benefits are funded by monetary contributions from individual employees and the Department. [Doc. 44-3 pages 41-42 (Dilts Dep. Ex. 2 at 33-34)]. Employees who elect to participate in the Retirement Plan make contributions in an amount equal to a percentage of their monthly salary, and the County also makes required annual contributions. [Doc. 44-3 pages 41-42 (Dilts Dep. Ex. 2 at 33-34)]. The Retirement Plan requires that the annual contributions are sufficient to prevent deterioration in the actuarial status of the fund. [Doc. 44-3 page 41 (Dilts Dep. Ex. 2 at 33)]. Accordingly, the Department is required to utilize the services of a pension engineer or actuary who

---

[1] The following facts are supported by appropriate citations to depositions, deposition exhibits, declarations, affidavits, and other admissible evidence as to which Defendants contend there are no genuine or material issues of fact. Citations to the record are to excerpts contained within exhibits attached to Plaintiff's Motion for Partial Summary Judgment, Doc. 44-2 and Doc. 44-3 or to Defendants' Appendix consisting of Exhibits A, B, and C. The facts are taken for the non-movant Plaintiff as required by Fed. R. Civ. P. 56.

must chart the funds, the contributions made thereto, and the benefits paid therefrom to ensure the plan is sufficiently funded on a sound, actuarial basis.[2]  [Doc. 44-3 page 41 (Dilts Dep. Ex. 2 at 33)]. Such funds are held in a trust, and the Lake County Treasurer is the Trustee of the pension trust. [Doc. 44-3 page 9 (Dilts Dep. Ex. 2 at 1); Dilts Decl., Ex. A, ¶ 4].

### 1.    Normal Retirement Benefits Based On Age And Years Of Service.

Employees are not eligible to receive pension benefits until the occurrence of certain events. [Doc. 44-3 pages 10-37 (Dilts Dep. Ex. 2 at 14-29)].  First, officers are eligible for pension benefits upon normal retirement from the Department ("normal retirees").  [Doc. 44-3 page 22 (Dilts Dep. Ex. 2 at 14)].  The Retirement Plan sets the Department's normal retirement date as the date the officer reaches age 60, at which time the officer may retire and begin receiving pension benefits.  [Doc. 44-3 page 22 (Dilts Dep. Ex. 2 at 14)].  Officers can elect to retire earlier than age 60, with normal retirement benefits, if they have 20 years of service with the Department.  [Doc. 44-3 page 22 (Dilts Dep. Ex. 2 at 14); Doc. 44-2 page 6 (Dilts Dep. 22:18-21)].  Upon normal retirement, the officer receives a monthly pension benefit, which is subject to federal income tax.  [Doc. 44-3 page 22 (Dilts Dep. Ex. 2 at 14); Dilts Decl., Ex. A, ¶ 6].  The benefit is determined by the following formula:

1)  [2.5% of the officer's final average monthly salary[3] + $1.00] x [Years of Service (up to 20 years)]; and

2)  [2% of the officer's final average monthly salary] x [Years of Service above 20 years (up to a maximum of 32 total years)].

---

[2] The Lake County Police Pension, which includes both the Retirement Plan and Benefit Plan, employs McCready & Keene, a OneAmerica company, as its actuary.  [Dilts Decl., Ex. A, ¶ 4; Doc. 44-2 page 7 (Dilts Dep. 27:14-17)].  The plans also employ an employee benefits consultant, Chris Dilts, to oversee implementation of the plans, review benefits, and oversee the general administration of the plans. [Dilts Decl., Ex. A, ¶¶ 2-3; Doc. 44-2 page 2 (Dilts Dep. 6:6-8:4)].

[3] The officer's final average monthly salary is based on pay received in his three highest paid years. [Doc. 44-3 page 11 (Dilts Dep. Ex. 2 at 3); Doc. 44-2 pages 6-7 (Dilts Dep. 24:5-25:4)].

[Doc. 44-3 page 23 (Dilts Dep. Ex. 2 at 15)]. The total benefit provided is capped at 74% of the officer's final average monthly salary plus $20.00. [Doc. 44-3 page 23 (Dilts Dep. Ex. 2 at 15)]. Retirees with at least 20 years of service may alternatively elect to receive a single sum cash settlement in lieu of monthly pension payments. [Doc. 44-3 page 24 (Dilts Dep. Ex. 2 at 16); Dilts Decl., Ex. A, ¶ 6]. The majority (approximately 75%) of normal retirees chose this option. [Dilts Decl., Ex. A, ¶ 6].

The Retirement Plan provides for a limited COLA to monthly pension payments provided to normal retirees. [Doc. 44-3 pages 29-30 (Dilts Dep. Ex. 2 at 21-22)]. Officers who work until age 60, or those with 20 years of service who have reached age 55, are eligible for a COLA to their monthly benefits. [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21)]. The COLA is equal to the percentage increase, if any, in the U.S. Department of Labor's Consumer Price Index, capped at 3%, and is not a guaranteed amount. [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21); Doc. 44-3 page 86 (Dilts Dep. Ex. 7) (identifying actual COLA percentages applied by the Department since 1993 showing varying amounts from 0% to 3%); Doc. 44-2 page 7 (Dilts Dep. 27:1-28:9)]. The COLA does not apply before the officer reaches age 55 and is subject to a ceiling of 100% of the original benefit amount. [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21); Doc. 44-2 page 7 (Dilts Dep 26:16-23)]. Further, there is no COLA applied if the officer elects to receive a cash settlement instead of monthly payments at retirement, which the majority do so elect. [Dilts Decl., Ex. A, ¶ 6].

## 2. Limited Benefits Available When A Member Severs Employment Prior To Retirement.

If an officer's employment terminates for a reason other than retirement, death or disability, he may be eligible for limited pension benefits.[4] [Doc. 44-3 page 32 (Dilts Dep. Ex. 2 at 24); Doc. 44-

---

[4] For simplicity, the masculine pronouns he, him, his, etc., are used to denote both male and female officers.

2 page 8 (Dilts Dep. 29:8-15)].  If an officer terminates his employment from the Department prior to reaching age 60 or completion of 20 years of service (i.e. prior to vesting), the officer is not considered a retiree and is not eligible for full retirement benefits.  [Doc. 44-3 pages 32-33 (Dilts Dep. Ex. 2 at 24-25); Dilts Decl., Ex. A, ¶ 8].  This would include, for example, an officer who elects to leave the Department and work elsewhere prior to reaching retirement age.  [Dilts Decl., Ex. A, ¶ 8].  The Retirement Plan provides that such officers can choose from two options:  (1) a lump sum payment equal to the net amount of their contributions as of the separation date, plus interest; or (2) a reduced percentage of the pension benefit earned by the officer as of the termination date, deferred until the officer reaches age 50.  [Doc. 44-3 page 32 (Dilts Dep. Ex. 2 at 24); Doc. 44-2 pages 5, 8 (Dilts Dep. 19:16-20:15, 30:13-31:17)].  There is no COLA available for these benefits under the Retirement Plan.  [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21)].

### 3. Disability Retirement Benefits When An Officer's Employment Ends Due To A Disability.

If an officer must retire due to the occurrence of a disability, the officer is entitled to a disability retirement benefit under the Retirement Plan.  [Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26)].  In this situation, the officer receives a lump sum payment equal to the net amount of his contributions over the entirety of his employment, plus interest.  [Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26); Doc. 44-2 pages 5-6 (Dilts Dep 20:16-21:14)].  The officer is given the option of receiving a cash refund or a direct rollover to a separate retirement plan, such as an Individual Retirement Account ("IRA").  [Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26); Plaintiff Dep., Ex. B at 153:5-20 and Dep. Ex. 11; Doc. 44-2 page 11 (Dilts Dep. 41:21-42:1)].  A COLA does not apply to the disability retirement benefit under the Retirement Plan.  [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21)].

### 4. Options For Passing Retirement Benefits To Survivors Upon Death.

The Retirement Plan also allows retirees to elect certain options for benefits to pass to his or her surviving spouse or beneficiary in the event of the retiree's death.  [Doc. 44-3 page 24 (Dilts Dep.

Ex. 2 at 16)].  A retiree may elect to receive a monthly benefit for his lifetime, with the same monthly benefit payable to his beneficiary for a defined period of time after his death.  [Doc. 44-3 page 24 (Dilts Dep. Ex. 2 at 16); Doc. 44-2 page 20 (Dilts Dep. 79:21-80:14)].  A retiree may also elect to receive a reduced monthly amount during his own lifetime and to provide for an adjusted monthly benefit for the life of his surviving spouse.  [Doc. 44-3 page 24 (Dilts Dep. Ex. 2 at 16); Doc. 44-2 page 20 (Dilts Dep. 79:21-80:14)].  A COLA does not apply to these elective survivor benefits.[5]  [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21); Doc. 44-2 page 19 (Dilts Dep. 74:7-10)].

**B.     The Lake County Benefit Plan For Disabled Officers.**

Separate from the above-described pension benefits provided under the Retirement Plan, the Department also offers an additional disability benefit to officers who become disabled and are unable to engage in substantial gainful activity.  [Doc. 44-3 pages 50-60 (Dilts Dep. Ex. 3); Doc. 44-2 page 11 (Dilts Dep. 41:21-42:1); Dilts Decl., Ex. A, ¶ 9].  Such benefits are provided under a separate, additional benefit plan known as the Lake County Police Benefit Plan (the "Benefit Plan").  [Doc. 44-3 pages 50-60 (Dilts Dep. Ex. 3); Doc. 44-2 page 11 (Dilts Dep. 41:21-42:1); Dilts Decl., Ex. A, ¶ 4].  The disability benefit provided under the Benefit Plan is separate from and ***in addition to*** the disability retirement benefits provided to a disabled officer under the Retirement Plan (described in Section II(A)(3) above).  [Doc. 44-3 page 34 (Dilts Dep. Ex. 2 at 26); Doc. 44-3 page 55 (Ex. 3 at 6); Doc. 44-2 pages 4, 11 (Dilts Dep. 14:6-16, 41:21-42:1); Plaintiff Dep., Ex. B at 135:14-136:13 and Dep. Ex. 8 at 6].  The disability benefit consists of a monthly disability benefit payable for the life of the member, reimbursements for medical expenses related to the disability, and life insurance benefits.

---

[5] If a normal retiree received a COLA to his monthly benefit prior to the date of death, the survivor benefit is based on the monthly amount payable to the retiree immediately prior to the death.  [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21)].  Thus, the survivor benefit may be based on past-received COLA adjustments while the retiree was living, if applicable, but the survivor benefit would not receive a COLA going forward.  [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21); Dilts Decl., Ex. A, ¶ 7; Doc. 44-2 page 19 (Dilts Dep. 74:7-10)].

[Doc. 44-3 pages 54-55 (Dilts Dep. Ex. 3 at 5-6)]. Terms and provisions governing the disability benefits are set forth in a separate written plan known as the Benefit Plan. [Doc. 44-3 pages 50-60 (Dilts Dep. Ex. 3); Dilts Decl., Ex. A, ¶ 4].

1.      **Disability Benefits For Disabled Officers Under The Benefit Plan.**

Disability benefits under the Benefit Plan are determined based on the member's date of hire and whether the disability arose in the line of duty. [Doc. 44-3 pages 54-55 (Dilts Dep. Ex. 3 at 5-6)]. For members hired before December 1, 2004 (like Plaintiff), the disability benefit is a monthly benefit based on the same formula incorporated in the Retirement Plan. [Doc. 44-3 page 54 (Dilts Dep. Ex. 3 at 5); Doc. 44-2 pages 11, 18-19, 21 (Dilts Dep. 42:2-12, 72:20-73:19, 82:7-25); Plaintiff Dep., Ex. B at 127:22-128:17 and Dep. Ex. 8 at 5]. In the event the member's disability incurred in the line of duty, the disabled member is immediately treated as if he has completed up to 32 years of service (but not exceeding the maximum number of years he would have attained at normal retirement age (60)). [Doc. 44-3 page 54 (Dilts Dep. Ex. 3 at 5); Doc. 44-2 page 11 (Dilts Dep. 42:13-18)]. Disability benefits paid under the Benefit Plan are not offset or reduced by disability benefits received by an officer from other sources, such as private disability insurance or Social Security disability income. [Dilts Decl., Ex. A, ¶ 9; Plaintiff Dep., Ex. B at 141:1-142:8]. Further, and importantly, unlike monthly retirement benefits, disability benefits generally are ***not*** subject to income taxes. [Dilts Decl., Ex. A, ¶ 9; Plaintiff Dep., Ex. B at 155:24-156:1].

2.      **Additional Benefits Afforded Disabled Officers Under The Benefit Plan.**

Under the Benefit Plan, disabled officers also receive additional benefits beyond the monthly disability payments. [Doc. 44-3 pages 54-57 (Dilts Dep. Ex. 3 at 5-8)]. Officers are reimbursed for any out-of-pocket medical expenses associated with the officer's disability. [Doc. 44-3 pages 54-56 (Dilts Dep. Ex. 3 at 5-7); Plaintiff Dep., Ex. B at 132:5-134:22]. Also, certain disabled officers are provided a life insurance policy in the amount of $25,000 free of charge. [Doc. 44-3 page 57 (Dilts

Dep. Ex. 3 at 8)].  For totally and permanently disabled officers, the officer may elect to receive a portion of the life insurance coverage amount, $15,000, during his life in monthly installments over five years (with the remaining $10,000 benefit payable at death).  [Doc. 44-3 page 57 (Dilts Dep. Ex. 3 at 8); Plaintiff Dep., Ex. B at 137:14-139:5].

### 3. Options For Passing Disability Benefits To Survivors Upon Death.

Disabled officers also have options to elect survivor benefits for their monthly disability benefits under the Benefit Plan.  [Doc. 44-3 page 57 (Dilts Dep. Ex. 3 at 8)].  The officer may elect to receive a monthly disability benefit for his lifetime, with the same monthly benefit payable to his beneficiary for a designated period of time after his death (up to 20 years).  [Doc. 44-3 page 57 (Dilts Dep. Ex. 3 at 8)].  A disabled officer alternatively may elect to receive a reduced monthly amount during his lifetime in order to provide for an adjusted monthly benefit for the life of his surviving spouse.  [Doc. 44-3 page 57 (Dilts Dep. Ex. 3 at 8)].

### 4. Additional Dependent Benefit Available Under The Benefit Plan.

The Benefit Plan also provides for an additional dependent benefit for the surviving spouse, dependent children, or dependent parent of an officer who dies after retiring including due to a disability.  [Doc. 44-3 pages 57-58 (Dilts Dep. Ex. 3 at 8-9); Doc. 44-2 page 14 (Dilts Dep. 55:2-14)]. The surviving spouse or dependent parent receives $500 per month for life, and each dependent child receives $100 per month until his/her 18th birthday.  [Doc. 44-3 page 58 (Dilts Dep. Ex. 3 at 9)].  A surviving spouse receiving this dependent benefit (including the surviving spouse of a disabled officer) is eligible to receive a COLA on the $500 benefit once the spouse reaches age 55.  [Doc. 44-3 page 58 (Dilts Dep. Ex. 3 at 9); Doc. 44-2 page 19 (Dilts Dep. 74:11-24)].

### C. Plaintiff's Employment and May 2003 Retirement From The Lake County Sheriff's Department.

In June of 1995, Plaintiff Thomas Ostrowski applied for a patrol officer position with the Department.  [Plaintiff Dep., Ex. B at 48:23-49:16 and Dep. Ex. 16].  While completing training at the

8

police academy the following year, Plaintiff suffered a back injury during a training exercise. [Plaintiff Dep., Ex. B at 53:10-55:8 and Dep. Ex. 17]. Plaintiff was able to perform his duties as a patrol officer for several years following the injury, but he had to seek treatment for back problems beginning around 2001. [Plaintiff Dep., Ex. B at 60:1-61:24, 62:6-63:7]. After undergoing medical treatments for his back, Plaintiff applied for a disability benefit under the Benefit Plan on January 21, 2003. [Plaintiff Dep., Ex. B at 86:22-87:15 and Dep. Ex. 27]. Plaintiff was granted disability status and his employment ended on May 22, 2003 at the age of 42, at which time he began receiving a monthly disability benefit under the Benefit Plan (starting June 1, 2003) in the amount of $1,848.61. [Plaintiff Dep., Ex. B at 93:5-21, 152:6-23, 156:2-19 and Dep. Exs. 11, 21, 47; Doc. 44-3 page 61 (Dilts Dep. Ex. 4); Doc. 44-2 pages 12-13 (Dilts Dep. 48:2-49:21)]. Per the terms of the Benefit Plan, this amount was calculated using the same formula applied by the Retirement Plan for normal retirees assuming Plaintiff had worked until normal retirement age:

1) [Average monthly salary (for the 3 highest paid years) $3,047.67 x 2.5%] x 20 years = $1,523.84; and
2) [Average monthly salary $3,047.67 x 2%] x 5 years = $304.77.
3) $1,523.84 + $304.77 + $20 = $1848.61.

[Doc. 44-3 page 61 (Dilts Dep. Ex. 4); Doc. 44-2 pages 12-13 (Dilts Dep. 48:2-49:21); Plaintiff Dep., Ex. B at 147:15-151:17 and Dep. Ex. 48]. Plaintiff had six years of service with the Department at the time of his disability retirement, but his disability benefits were calculated assuming he had completed 25 years of service.[6] [Doc. 44-3 page 61 (Dilts Dep. Ex. 4); Doc. 44-2 pages 12-13 (Dilts Dep. 48:2-49:21); Doc. 44-1, ¶ 10].

---

[6] Plaintiff was hired by the Department at the age of 34, and he would have completed 25 years of service if he had worked until age 60. [Dilts Decl., Ex. A, ¶ 12; Doc. 44-3 pages 66-85 (Dilts Dep. Ex. 5)]. If Plaintiff's disability benefit had been calculated based on his actual years of service, his benefit would have been $477.15 per month ($3,047.67 x 2.5% x 6 = $457.15 + $20 = $477.15). [Dilts Decl., Ex. A, ¶ 12]. By comparison, if Plaintiff had terminated his employment in 2003 for reasons other than disability, his benefit would have been further reduced to 30% of that amount, or $143.15,

Plaintiff does not pay taxes on the monthly disability benefit he receives from the Benefit Plan. [Plaintiff Dep., Ex. B at 155:24-156:1 and Dep. Ex. 46]. Plaintiff also has received Social Security disability benefits since June 2004 in the amount of $1,814 per month, and a COLA is applied to such benefits. [Plaintiff Dep., Ex. B at 141:1-24, 142:9-14 and Dep. Ex. 1 at 11]. Additionally, Plaintiff paid for a separate disability insurance policy through a private insurer, and he received $750.00 per month for eighteen months through that policy. [Plaintiff Dep., Ex. B, Dep. Ex. 1 at 11]. The disability benefit he receives from the Benefit Plan is not offset, reduced, or adjusted based on these or any other amounts he receives relating to his disability. [Plaintiff Dep., Ex. B at 141:1-142:8; Dilts Decl., Ex. A, ¶ 9]. At the time of his retirement due to disability, Plaintiff also received an additional disability retirement benefit under the Retirement Plan. [Doc. 44-3 page 34 (Dilts Dep. Ex. 2 at 26); Doc. 44-3 page 55 (Dilts Dep. Ex. 3 at 6); Plaintiff Dep., Ex. B at 135:14-136:13]. Plaintiff received a lump sum return of all of his contributions, plus interest, for a total amount of $10,733.07. [Plaintiff Dep., Ex. B at 152:6-153:20 and Dep. Ex. 11]. Plaintiff received this Retirement Plan benefit payment on July 15, 2003. [Plaintiff Dep., Ex. B at 142:15-143:22 and Dep. Ex. 10].

Recipients of disability benefits under the Benefit Plan are permitted to have minimal employment income outside the Department without reduction of disability benefits. [Doc. 44-3 page 54 (Dilts Dep. Ex. 3 at 5)]. From 2014 to 2015, Plaintiff was employed by the Lake County E-911 Board as a dispatcher. [Plaintiff Dep., Ex. B at 97:20-22 and Dep. Ex. 1 at 11].

### D. Plaintiff's Efforts To Pursue A COLA For Disability Benefits.

Since 2004, Plaintiff has undertaken efforts to advocate for a COLA for disability benefits under the Benefit Plan. [Plaintiff Dep., Ex. B at 98:1-102:13, 113:11-114:19, 117:7-118:6, 169:24-

---

deferred until he reached age 50. [Dilts Decl., Ex. A, ¶ 12; Doc. 44-3 page 32 (Dilts Dep. Ex. 2 at 24)].

171:9].  Beginning in 2004, Plaintiff communicated with the then Sheriff about providing a COLA to disabled officers and sent letters in support thereof to the Pension Committee, the Merit Board, and the County Council.[7]  [Plaintiff Dep., Ex. B at 98:1-102:13, 113:22-114:19, 159:7-161:15; Doc. 44-1, ¶ 14].  Plaintiff also communicated with Lake County Council members about this same issue around 2007 and 2014, and he spoke before the County Council in support of a COLA for disability benefits in 2015, 2016, and 2017.  [Plaintiff Dep., Ex. B at 113:11-21, 117:7-118:6, 169:24-171:9 and  Dep. Exs. 13-15; Doc. 44-1, ¶ 14].

In response to some of Plaintiff's efforts, the County Council looked at the issue in 2017 and contacted the plans' actuary to review it.  [Doc. 44-3 pages 87-130 (Dilts Dep. Ex. 8); Doc. 44-2 pages 14-15 (Dilts Dep. 55:19-58:15].  In collaboration with the Merit Board and Pension Committee, the Council requested the actuary to study the impact of adding a COLA to disability benefits and determine the applicable cost under the same terms as that applied to normal retirees and to surviving spouses receiving a $500 dependent benefit.  [*Id.*].  Specifically, the actuary provided a cost assessment based on applying the benefit to all current and future disability benefit recipients.  [*Id.*].  Actuarial studies determine cost as a percentage of the total amount of Department payroll, and the actuary determined that the addition of a disability benefit COLA would require additional funding equal to 3% of payroll each year.  [*Id.*].  For 2018, this amount would equal $247,380, and a similar amount would have to be appropriated each year to fund this added benefit if adopted.  [Doc. 44-2 pages 15, 20 (Dilts Dep. 59:11-19, 78:4-79:7); Doc. 44-3 pages 87-130 (Dilts Dep. Ex. 8)].  No further action was taken regarding the COLA issue.  [Doc. 44-2 page 16 (Dilts Dep. 63:18-23); Plaintiff Dep., Ex. B at 162:24-163:15].

---

[7] The Merit Board is a five-member Board appointed by the Sheriff pursuant to Indiana Code.  [Doc. 44-3 page 13 (Dilts Dep. Ex. 2 at 5)].  The Pension Committee consists of the Sheriff, a member of the Merit Board, and officer representatives and was established by the Retirement Plan to oversee and administer the benefits.  [Doc. 44-3 page 38 (*id.* at 30)].

E.      Plaintiff's Release Of All Claims In A Prior Lawsuit.

In May 2016, Plaintiff filed a lawsuit against Lake County entities alleging disability discrimination in violation of the ADA with respect to his employment separation from the E-911 Board.  [Plaintiff Dep., Ex. B at 36:13-17, 41:17-43:10 and Dep. Ex. 5; *see Ostrowski v. Lake County et al.*, Case No. 2:16-cv-00166 (N.D. Ind. filed May 12, 2016)].  Therein, Plaintiff alleged claims against the Lake County E-911 Board, the Lake County Council, and the Lake County Board of Commissioners.  [Plaintiff Dep., Ex. B, Dep. Ex. 5].  Plaintiff entered a settlement and release agreement in February 2017 with Lake County and the named entities as part of the resolution of the matter.  [Plaintiff Dep., Ex. B at 44:8-45:9, 166:23-168:6 and Dep. Ex. 6][8].  As part of that settlement, Plaintiff agreed to release Lake County, the named entities, any related entities, and any agents or employees thereof, from "any and all claims, demands, damages, causes of action" including but not limited to claims arising under the ADA and any and all claims under any federal, state, or local employment or compensation law of any kind.  [*Id.*].

III.    Discussion.

A.      Legal Standard.

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the Court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (mandating summary judgment when this standard is met); *Nehan v. Tootsie Roll Indus., Inc.*, 621 F. App'x 847, 849 (7th Cir. 2015).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential

---

[8] Plaintiff's Dep. Exhibit 6 (contained in Defendants' Appendix as part of Exhibit B) is a Confidential Settlement Statement with the confidential settlement amount redacted for purposes of Defendants' summary judgment filing.  The redacted amount is not relevant to the Court's consideration of the pending motion for summary judgment.

to that party's case, and on which that party will bear the burden of proof at trial." *Holland v. Methodist Hosps.*, No. 2:14-CV-88-PRC, 2016 WL 5724355, at *1 (N.D. Ind. Sept. 30, 2016) (quoting *Celotex*, 477 U.S. at 322). "[A] party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003). Plaintiff must come forward with "*specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist. 163,* 315 F.3d 817, 822 (7th Cir. 2003) (emphasis in original).

"On cross motions for summary judgment, a court construes all inferences in favor of the party against whom the motion under consideration is made. The Court looks to the burden of proof each party would bear on an issue at trial." *Carson v. Lake Cty.*, No. 2:14-CV-117-PRC, 2016 WL 4798965, at *3 (N.D. Ind. Sept. 14, 2016), *aff'd sub nom. Carson v. Lake Cty., Indiana*, 865 F.3d 526 (7th Cir. 2017) (internal citations and quotations omitted).

### B.    Plaintiff's ADA Claim Fails As A Matter Of Law.

Plaintiff concedes that he cannot establish a valid ADA claim under controlling case law. Binding Seventh Circuit precedent precludes Plaintiff's ADA claim, and therefore, summary judgment in favor of Defendants is warranted. However, to the extent Plaintiff is seeking to have the law changed, the Defendants address Plaintiff's claim in greater detail.

Plaintiff alleges a violation of the employment protections under Title I of the ADA based on the absence of a COLA to his monthly disability benefit under the Department's Benefit Plan. Title I of the ADA provides in relevant part: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines "covered entity" as "an employer, employment agency, labor organization, or joint labor-management

committee." 42 U.S.C. § 12111(2). The term "qualified individual with a disability" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Interpreting these provisions, the Seventh Circuit has explained that "[t]he employment provisions of the ADA (Title I) grant rights only to **employees** who, though they have a disability, are able to perform the essential functions of their job even if only with some accommodation to their disability." *Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 457 (7th Cir. 2001) (emphasis added). Former employees, including retirees and those receiving some type of post-employment benefit, are not considered "qualified individuals with a disability" entitled to protection under Title I. *See id.* (affirming opinion finding that former employees are not protected by the ADA's employment provisions); *E.E.O.C. v. CNA Ins. Companies*, 96 F.3d 1039, 1043-45 (7th Cir. 1996) (disabled former employee receiving benefits under the employer's long-term disability plan did not hold an "employment position" and therefore did not have a valid ADA claim); *Erwin v. Nw. Mut. Life Ins. Co.*, 999 F. Supp. 1227, 1230 (S.D. Ind. 1998) ("benefit recipient" and "former employee" was not a "qualified individual with a disability" entitled to recover under Title I of the ADA). Plaintiff is not an employee of Defendants but brings his claim based on his status as a former employee receiving disability benefits. Thus, Plaintiff cannot maintain a claim for disability discrimination under Title I of the ADA, and his ADA claim must be dismissed.

Even if Plaintiff could somehow establish that he should be covered by Title I based on his status as a former employee – which he cannot – his ADA claim still fails. "An ADA plaintiff must show that he is "a qualified individual with a disability," that is, one who is capable of performing the essential functions of the job with or without an accommodation." *Steinker v. EnovaPremier, LLC*, No. 3:11-CV-010-RLY-WGH, 2012 WL 3597392, at *5 (S.D. Ind. Aug. 20, 2012) (citing 42 U.S.C.

14

§ 12111(8)).  Plaintiff cannot establish that he is a qualified individual with a disability.  He is unable to perform the duties of a patrol officer.  He admitted this during his deposition:

> **Q:  Sitting here today, are you able to perform the job duties of a patrolman?**
> A:  No, ma'am, not of a patrol -- of a patrolman, no, ma'am.
>
> **Q:  And since 2003 have you had any ability to perform those job duties?**
> A:  No, ma'am, because I -- my back is never -- has never fused.

[Plaintiff Dep., Ex. B at 82:21-83:3].

Moreover, Plaintiff cannot identify any form of full-time work that he is capable of performing.  [Plaintiff Dep., Ex. B at 97:2-7 ("Q:  Is there any form of work that you believe that you're able to do full time today?  A:  Not – not at this time.")].  Thus, Plaintiff is unable to work and cannot establish that he is a qualified individual under the ADA.  *See, e.g.*, *Thurston v. Borden Waste-Away Serv., Inc.*, No. 3:96-CV-674RP, 1998 WL 456441, at *9 (N.D. Ind. May 19, 1998) (plaintiff was not a "qualified individual with a disability" because he was unable to perform his job); *Morgan*, 268 F.3d at 459 (former employees were totally disabled and unable to work and thus were not qualified individuals under the Act).  Summary judgment should be entered in favor of Defendants on Plaintiff's ADA claim.

**C.    Plaintiff's Equal Protection Claim Fails.**

Summary judgment in favor of Defendants is warranted on Plaintiff's Equal Protection claim. Plaintiff alleges that the lack of a COLA for disability benefits under the Benefit Plan, while providing a COLA to a limited number of persons who receive retirement benefits under the Retirement Plan is a violation of the Equal Protection Clause.  In assessing this claim, "[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn . . . is rationally related to a legitimate state interest." *Mathews v. City of S. Bend*, No. 3:10-CV-390, 2013 WL 2149482, at *8 (N.D. Ind. May 16, 2013).  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld

against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Comm'cns, Inc.*, 508 U.S. 307, 313 (1993); *Oriental Health Spa v. City of Fort Wayne*, 864 F.2d 486, 490 (7th Cir. 1988) ("Legislative bodies are presumed to have acted constitutionally, even in the absence of an express policy favoring the enactment of a law.  The state or municipal interest is presumed to be legitimate.").  Moreover, "[i]f the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970) (internal citations and quotations omitted).

### 1.      Plaintiff Is Not Similarly Situated To Those Who Receive A COLA.

Plaintiff, a recipient of a monthly disability benefit under the Benefit Plan, and who received a lump sum refund of contributions plus interest under the Retirement Plan, is not similarly situated to a normal retiree receiving monthly retirement benefits under the Retirement Plan or to a surviving spouse receiving a $500 dependent benefit.  "It is axiomatic that the Equal Protection clause of the Fourteenth Amendment **only guarantees like treatment to persons similarly situated**." *Desris v. City of Kenosha, Wis.*, 687 F.2d 1117, 1119 (7th Cir. 1982) (emphasis added).  The laws to which the Fourteenth Amendment applies "are expressions of policy arising out of specific difficulties, addressed to the attainment of specific ends by the use of specific remedies.  The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940).  Thus, to establish his claim, Plaintiff must demonstrate that a recipient of disability benefits under the Benefit Plan and a lump sum under the Retirement Plan, like himself, is similarly situated to a recipient of normal retirement benefits under the Retirement Plan or to a widow receiving a dependent benefit under the Benefit Plan – which he cannot do.

On this point, *Desris* is instructive.  There, the Seventh Circuit explained that retirees under two different pension plans, who were entitled to different benefits and obligations under their

respective plans, were not similarly situated for Equal Protection analysis. *Id.* at 1120-21. In that case, two different pension plans applied to firefighters employed by the City of Kenosha, Wisconsin. *Id.* at 1117-18. The firefighters' hire date was the sole factor that determined in which plan the firefighters participated (those hired before a certain date qualified for one plan, and those hired thereafter were eligible for a different plan). *Id.* The plaintiffs raised an Equal Protection challenge based on the fact that their plan imposed an earlier mandatory retirement age as compared to the other plan. *Id.* at 1118-19. However, the plans were different in several others respects, foreclosing a finding that the plaintiffs were similarly situated to participants in the other plan. *Id.* at 1119-20. Notably, the plaintiffs' plan provided better financial benefits – up to 80% of prior salary as compared to 50% for the other plan. Thus, while the other plan provided a higher retirement age, the financial benefits were not the same. *Id.* at 1120. Accordingly, the Court found that the different retirement age provisions could **not** be viewed in isolation, and when viewing the plans collectively, the officers in such plans were not similarly situated to one another. *Id.*

Even more salient is the Court's opinion in *Kralemann v. Police Retirement System of the City of St. Louis*, No. 89-1465-C-7 (E.D. Mo. Nov. 22, 1993) (J. Hamilton), *aff'd* No. 94-1115, 1994 WL 578204 (8th Cir. Oct. 20, 1994) [*See* Ex. C, District Court Opinion, hereinafter "*Kralemann*"]. Therein, former police officers with the St. Louis Police Department receiving disability benefits filed an Equal Protection action based in part on the absence of a COLA to their disability benefits. *Kralemann* at 5-6, 10-11. The *Kralemann* plaintiffs' claim (akin to that alleged in the instant matter) was premised in part on the fact that normal retirees – defined as those who retired after 20 years of service or after attaining age 55 – received a COLA, but disability retirees did not. *Kralemann* at 4-5. In comparing the groups, the Court determined that they were not similarly situated for Equal Protection analysis. *Id.* at 10, n.7. The disability retirees had not served long enough to become vested in the plan yet were entitled to benefits, while the normal retirees received benefits only upon vesting (based on years of

service or age).  *Id.*  Additionally, the disability retirees' benefits were not taxable, and they were eligible for medical reimbursements for expenses associated with their disabilities.  *Id.*  Such benefits, however, did not apply to normal retirees.  *Id.*  Thus, based on these varying differences, the Court found that disabled retirees were not similarly situated to normal retirees and explained that "it was not appropriate to compare their benefits with those of [normal retirees]."  *Id.*

By way of further explanation, the Court in *Kralemann* said that a more appropriate comparison would be to compare disabled retirees with the non-disabled officers who left the police department before vesting.  *Id.*  Those non-disabled officers did not receive more favorable benefits or a COLA. *Id.*  Plaintiff notably ignores this group of officers in his Opening Brief.  [Doc. 45 at 3, n.3].  However, such officers, identified in Section II(A)(2) above, similarly separate employment prior to their normal retirement date.  [Doc. 44-3 pages 32-33 (Dilts Dep. Ex. 2 at 24-25); Dilts Decl., Ex. A, ¶ 8].  As was the case in *Kralemann*, officers who terminate employment prior to retirement age or 20 years of service also ***do not*** receive a COLA to their limited pension benefits.  [Doc. 44-3 page 29 (Dilts Dep. Ex. 2 at 21); Dilts Decl., Ex. A, ¶ 8].  Furthermore, such officers are only entitled to a reduced benefit amount deferred until the age of 50, unlike disabled officers like Plaintiff who receive full benefits immediately at separation.  [Doc. 44-3 pages 32-33 (Dilts Dep. Ex. 2 at 24-25); Dilts Decl., Ex. A, ¶¶ 8-9].  Thus, when comparing the appropriate groups, Plaintiff receives the same if not better treatment than appropriately compared officers who terminate prior to vesting.

As in *Desris* and *Kralemann*, in this case the Department's disability benefit recipients such as Plaintiff are not similarly situated to those officers who receive normal retirement benefits.  Principally, disability retirees and normal retirees receive benefits under two different plans:  one a retirement pension plan, and the other a disability benefit plan, both of which provide different benefits under different terms applicable to different populations.  [Plaintiff Dep., Ex. B, Dep. Exs. 8 and 9].  In order to be eligible for normal retirement benefits under the Retirement Plan, normal retirees must

work for the Department until age 60 or until they complete 20 years of service. [Doc. 44-3 pages 22-23 (Dilts Dep. Ex. 2 at 14-15)]. Thus, such officers must continue working and every year they must contribute a portion of their income to the plan in order to potentially receive a COLA on their future monthly retirement benefit if they work long enough to qualify for normal retirement. Those who receive a COLA must have either worked until they reach age 60 or reach age 55 with at least 20 years of service. [Doc. 44-3 pages 22-23 (Dilts Dep. Ex. 2 at 14-15)]. Disabled retirees like Plaintiff, however, need not have reached a certain age or years of service benchmark in order to be eligible for disability benefits under the Benefit Plan. [Doc. 44-3 pages 54-55 (Dilts Dep. Ex. 3 at 5-6); Dilts Decl., Ex. A, ¶ 9]. Rather, benefits become available upon an officer's retirement due to a disability. [Doc. 44-3 pages 50-60 (Dilts Dep. Ex. 3)]. Disabled retirees also no longer have to make annual plan contributions.

Second, while a similar formula is used to calculate the different types of benefits, retirement benefits for normal retirees are calculated using the officer's actual years of service. [Doc. 44-3 pages 22-23 (Dilts Dep. Ex. 2 at 14-15)]. For disabled retirees like Plaintiff who incurred their disability in the line of duty, disability benefits are calculated as if they worked until their normal retirement date. [Doc. 44-3 pages 54-55 (Dilts Dep. Ex. 3 at 5-6)]. Under this calculation, disabled retirees can receive a much higher disability benefit than they would if the benefit was based solely on their actual years of service. Indeed, Plaintiff's benefit was calculated assuming he worked 25 total years until his normal retirement date despite the fact that he had completed only six years of actual service (an addition of 19 years), resulting in a significantly higher benefit ($1,848.61 vs. $477.15). [Dilts Decl., Ex. A, ¶ 12; Doc. 44-3 page 61 (Dilts Dep. Ex. 4)]. In this regard, Plaintiff is not similarly situated to normal retirees – or even to disabled retirees whose disability did not incur in the line of duty – because his benefits are calculated using this favorable assumption.

Third, disabled retirees receiving monthly benefits under the Benefit Plan also are entitled to a separate disability retirement benefit under the Retirement Plan.  [Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26; Doc. 44-3 pages 55-56 (Ex. 3 at 5-6); Doc. 44-2 pages 4, 11 (Dilts Dep. 14:6-16, 41:21-42:1)].  Such benefits allow the disabled retiree to receive a lump sum refund (or if preferred a rollover to a qualified plan) of all of their prior retirement plan contributions, plus interest.  [*Id.*].  This separate benefit does not impact the amount of their monthly disability benefits.   However, normal retirees cannot receive both a full monthly retirement benefit and a lump sum payment.

Fourth, disability benefits under the Benefit Plan are not taxable, while the normal retirement benefits under the Retirement Plan are subject to income taxes.  [Dilts Decl., Ex. A, ¶¶ 6, 9].  Indeed, in Plaintiff's case, his total monthly disability benefit amounts to 60% of his average monthly salary at the time of his termination.  However, the disability benefits are not taxed, and therefore, come close to matching a disabled retiree's prior after-tax, take-home pay.  [Dilts Decl., Ex. A, ¶ 13].

Fifth, disabled retirees, like Plaintiff, receive reimbursements for out-of-pocket medical expenses related to their disability and also receive cost-free life insurance benefits under the Benefit Plan.  [Doc. 44-3 pages 54-57 (Dilts Dep. Ex. 3 at 5-8)].  These additional benefits are not available to normal retirees under the Retirement Plan.

Finally, to the extent Plaintiff purports to compare his own disability benefits with the limited $500 dependent benefit, this claim is quickly dispelled.  To clarify, the COLA for this dependent benefit applies **only** to the $500 dependent benefit provided to a surviving spouse of an officer who dies after retiring or who dies in the line of duty.  [Doc. 44-3 pages 57-58 (Dilts Dep. Ex. 3 at 8-9)].  Further, this benefit **does apply** to the surviving spouse of an officer who dies after retiring due to a disability (if Plaintiff had been married at the time of his retirement and the time of death, and his spouse survived him, his spouse would be entitled to this benefit and the COLA).  [*Id.* at 9].  Thus, surviving spouses of both normal and disabled retirees are eligible for this modest monthly payment

with a COLA.  In other words, there is no different treatment for surviving spouses of disabled retirees.  If Plaintiff argues, alternatively, that he is similarly situated to surviving spouses, this claim too falls flat.  One group includes officers who worked for and contributed to the pension plans, and the other includes their surviving spouses who might be dependent upon the officer for their income.  While both groups are deserving of benefits upon retirement or death, they have different circumstances and different benefits.  Thus, they are not similarly situated for equal protection analysis.

In sum, the beneficiaries to whom Plaintiff asks to be deemed similarly situated all receive different benefits under two different plans with different terms.  Given the numerous differences between the benefits provided to such persons under the different plans, such persons are not similarly situated.

> **2.  Rational Bases Justify The Difference Between Benefits Offered Under The Retirement Plan And The Benefit Plan.**

Even if Plaintiff could somehow show that the groups he seeks to compare for purposes of his Equal Protection claim are similarly situated, which he cannot do, rational bases justify their different treatment.  "[T]he party challenging the ordinance has the burden of demonstrating that no conceivable legitimate public interest is furthered by the classification."  *Oriental Health Spa*, 864 F.2d at 490 (citations omitted).  "Moreover, because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."  *F.C.C.*, 508 U.S. at 315.  "Thus, the absence of legislative facts explaining the distinction on the record, has no significance in rational-basis analysis."  *Id.  See Nordlinger v. Hahn,* 505 U.S. 1, 15 (1992) (equal protection "does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate **at any time** the purpose or rationale supporting its classification") (emphasis added).  "In other words, a legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."  *Id.*

Plaintiff's Opening Brief relies on the fact that the Department's benefit consultant and Defendants' Rule 30(b)(6) witness, Chris Dilts, was not aware of the specific, actual reasons for the different treatment relating to COLAs. [Doc. 45 at 8, 17-18, n.13]. However, the legislative body (in this case, the adopters of the two plans) need not articulate the actual reasons for its actions, and such reasons may be based on rational speculation. *F.C.C.*, 508 U.S. at 315; *Nordlinger,* 505 U.S. at 15. Plaintiff alleges, without support, that Mr. Dilts could not provide any "hypothesized" reasons for the action, but this is not an accurate reflection of his testimony. [Doc. 45 at 18, n.13]. Mr. Dilts was asked about the "reasons" for the differing COLA treatment, and he testified that he did not know of the reasons. [Doc. 44-2 page 16 (Dilts Dep. 63:18-64:24)]. Mr. Dilts asked whether he could offer an opinion for such treatment, and the question was posed back to him to offer his testimony as to the "reasons" of which he was actually aware. [Doc. 44-2 page 16 (Dilts Dep. 64:17-24)]. Thus, Mr. Dilts testified again that he did not know the actual reason. [*Id.*].

> **Q: Are you aware of any reasons for any differential treatment in cost of living increases in pension payments between disabled retirees and other retirees/surviving spouses?**
> A: Opinion?
> **Q: Are you aware of any reasons for the differential treatment that I just described?**
> A: No.

[*Id.*]. Importantly, on cross examination, Mr. Dilts offered additional testimony that one could assume that cost had an impact on the decision not to add a COLA for disability benefits (thereby offering one potential "hypothesis"). [Doc. 44-2 page 20 (Dilts Dep. 78:4-79:7)]. Nonetheless, this is not material. The law makes clear that defendants need not articulate the actual reasons for challenged action, and the Equal Protection analysis the Court must perform turns on whether any conceived or speculated reason can withstand rational-basis scrutiny.

Again, Plaintiff alleges that the failure to provide a COLA to disability benefits provided under the Benefit Plan, while providing one to certain normal retirees and surviving spouses, is a violation

of the Equal Protection Clause.  However, as explained above, the benefits available to these groups are different in numerous respects.  It would be reasonable to conclude that the different benefits available to disabled retirees could provide financial benefits better suited to meet their differing needs.

For instance, disabled retirees are eligible for certain benefits, not otherwise available to normal retirees or to surviving spouses, which offer more immediate access to funds.  A separate benefit available to disabled retirees under the Retirement Plan allows them to elect a lump sum refund of all of their pension contributions plus interest with no impact on their monthly disability benefits.  [Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26)].  This amount is paid at the time of a disabled retiree's separation, is in addition to the lifetime monthly disability benefits paid to disabled retirees under the Benefit Plan, and provides a disabled retiree an immediate source of funds.  For this benefit, disabled retirees can elect a cash refund or, if they prefer to put the money into a retirement account so it can continue to grow tax-deferred, a rollover into another retirement account for future income.  [Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26); Plaintiff Dep., Ex. B at 153:5-17 and Dep. Ex. 11; Dilts Decl., Ex. A, ¶¶ 9-10].  In Plaintiff's case, he chose to receive a cash refund plus interest, although he had the option to elect a rollover into an investment account.  [*Id.*].  Normal retirees, however, do not receive both a full monthly retirement benefit and a lump sum repayment of their contributions.  [Dilts Decl., Ex. A, ¶ 6].  The COLA for normal retirement benefits (and surviving spouses' dependent benefit) is neither immediately available nor does it offer a guaranteed amount, and it is spread over the course of many years.[9]  [Doc. 44-3 page 86 (Dilts Dep. Ex. 7)].  The refund of contributions offers disabled officers greater control over the use of such funds and is provided in full at an earlier date than those receiving any COLA.  Accordingly, this benefit is rationally related to the goal of providing

---

[9] Indeed, in two recent years, the Department did not apply a COLA.  [*See* Doc. 44-3 page 86 (Dilts Dep. Ex. 7 (2009: 0%; 2015: 0%))].

disabled retirees with additional sources of funding at their time of retirement to better suit their differing financial needs.

Along these same lines, the monthly disability benefits under the Benefit Plan start at the time of the disabled officer's disability (potentially earlier in life), while normal retirement benefits are not available until the officer has continued to work and has reached the age and years of service requirements. [Dilts Decl., Ex. A, ¶¶ 8-9]. Prior to reaching such benchmarks, officers who eventually become normal retirement age retirees and receive a monthly retirement benefit were required to continue working and contributing a portion of their salary to the plan. [*Id.*]. Indeed, for retirees who receive a COLA, they must have worked until age 60 or until they have at least 20 years of service and reach age 55. [Doc. 44-3 page 22 (Dilts Dep. Ex. 2 at 14)]. Although the retirement benefits provided to such officers will incrementally increase year to year (after age 55 or 60), the officer must continue to work up until that time, must continue to contribute a portion of the officer's salary to the plan, and does not have access to such funds until they advance year-to-year further into their retirement. [*Id.*].

Disabled officers like Plaintiff, however, begin receiving disability benefits at an earlier stage in life. Disabled officers need not meet any age or years-of-service requirements. They no longer make plan contributions, and therefore do not contribute over as long a period of time as normal retirees. Further, although they will have fewer actual years of service to the Department, their monthly disability benefit is calculated as if they had served until they had reached normal retirement age and begins to be paid immediately. [Doc. 44-3 pages 54-55 (Dilts Dep. Ex. 3 at 5-6)]. Indeed, Plaintiff's monthly disability benefits began at age 42 and were calculated as if he worked 25 total years instead of his actual six years of service. [Dilts Decl., Ex. A, ¶ 12; Doc. 44-3 page 61 (Dilts Dep. Ex. 4); Doc. 44-1, ¶ 10]. As a result, Plaintiff's monthly disability benefit is nearly four times higher than it would have been if it had been based on his actual years of service ($1,848.61 vs. $477.15). [Dilts

24

Decl., Ex. A, ¶ 12].  Further still, if Plaintiff had voluntarily left the department at the same time for reasons other than disability, his benefit would only be $143.15 per month (and would have been deferred until he reached age 50).  [Dilts Decl., Ex. A, ¶ 12].

In this way, the disability benefit and the normal retirement benefit serve two different purposes and are designed to meet the different needs of the different, respective recipients.  The normal retirement benefit serves the goal of providing funds during the post-normal retirement age timeframe.  [Dilts Decl., Ex. A, ¶ 6].  The disability benefit, on the other hand, largely provides funds to support a former officer prior to normal retirement age and continuing through the entire life of the recipient.  [Dilts Decl., Ex. A, ¶ 9].  Thus, while the normal retirement benefit has a COLA (later in life), the disability benefit funds are available prior to retirement age – much earlier in life.

The Seventh Circuit discussed this distinction in *Morgan*, comparing retirement benefits for normal and disabled retirees and explaining the significance of such benefits received at an earlier point in life:

> On the one hand, a normal retiree will get a larger pension than a disability retiree because he has more years of service.  On the other hand, a worker who becomes totally disabled can obtain benefits with [fewer] years of service.  He gets a smaller pension, but gets it sooner, maybe much, much sooner, in which event he may—despite the absence, of which the plaintiffs complain, of a cost of living increase—be treated better than a normal retiree.

*Morgan,* 268 F.3d at 459.  Plaintiff and other disabled retirees receive benefits at the time of their disability retirement, typically much sooner than normal retirees, and in Plaintiff's case – many years sooner (and continuing for his lifetime).  On the other hand, while a normal retiree will receive a COLA to his monthly pension benefits, those benefits are not available until much later in life.  Ostrowski could have saved some portion of his tax-free disability benefits each year and perhaps even contributed those savings to an IRA.  In doing so, he too could have hedged for inflation.  The structure of these benefits, again, is rationally related to the Department's legitimate interest in providing benefits believed to better suit the financial needs of disabled retirees.

Further still, the Department could have rationally determined that other benefits available under the Benefit Plan are better suited to meet the needs of disabled retirees as opposed to a COLA. The Benefit Plan provides disabled retirees with reimbursements for out-of-pocket medical costs incurred due to their disability as well as cost-free life insurance benefits. [Doc. 44-3 pages 54-56 (Dilts Dep. Ex. 3 at 5-7)]. These benefits are not provided to normal retirees under the Retirement Plan (or surviving spouses). For out-of-pocket medical expense reimbursements, funds are provided at the time the expense is incurred and cover medical costs related to a disability. [*Id*.]. For life insurance benefits, officers deemed totally and permanently disabled receive a portion of the proceeds of that insurance in monthly installments during life. [Doc. 44-3 page 57 (Dilts Dep. Ex. 3 at 8)]. Accordingly, as opposed to an annual COLA, which does not provide a guaranteed or upfront amount, the out-of-pocket medical expense reimbursement benefit pays medical expenses and is immediately available to recoup such costs, and a portion of the life insurance benefit is available to totally disabled officers immediately upon retirement. Thus, by providing these additional benefits only to disabled retirees – and not to normal retirees or surviving spouses – the Department further serves the legitimate goal of providing benefits that better meet the differing financial needs of disabled retirees.

The drafters of the plans similarly could have implemented the COLA for normal retirees to serve the legitimate goal of attempting to equalize post-retirement benefits. As set forth above, disabled retirees are eligible for several benefits not otherwise available to normal retirees or surviving spouses: a lump sum refund of all employee contributions to the Retirement Plan plus interest in addition to a full monthly benefit payment under the Benefit Plan, benefits that are not tied to age or years-of-service requirements and that are not subject to federal income taxation, out-of-pocket medical expense reimbursements, and life insurance benefits. [Doc. 44-3 pages 54-57 (Dilts Dep. Ex. 3 at 5-8); Doc. 44-3 pages 33-34 (Dilts Dep. Ex. 2 at 25-26); Dilts Decl., Ex. A, ¶¶ 9-10].

In comparison, normal retirees must work until a certain age or years of service – and must continue making plan contributions out of their salary up to that point – in order to be eligible for normal retirement benefits with a COLA.  [Doc. 44-3 page 22 (Dilts Dep. Ex. 2 at 14); Dilts Decl., Ex. A, ¶ 6].  Further, the monthly disability benefits under the Benefit Plan are not subject to income taxes, but benefits for normal retirees under the Retirement Plan are taxed.  [Dilts Decl., Ex. A, ¶¶ 6, 9].  As taxes generally increase over time, any taxation serves to further erode or reduce the net benefits paid to a normal retirement benefit recipient.  In these several ways, the benefits for disabled retirees can result in more favorable benefits to disability retirees when compared to other benefit recipients.  Thus, the provision of a COLA to the recipients of normal retirement benefits is rationally related to the legitimate interest of attempting to equalize post-retirement income.

As further support for this point, post-disability retirement income is available to disabled retirees that is not similarly available to normal retirees, and the Benefit Plan does not reduce disability benefits based on such amounts.  For instance, disabled retirees can apply for and receive federal Social Security disability income in addition to and without reduction to their monthly disability benefit from the Department under the Benefit Plan.  [Dilts Decl., Ex. A, ¶ 9].  Also, to the extent disabled officers obtained private disability insurance through a separate insurer, they can obtain such benefits without reduction of the monthly disability benefit paid under the Benefit Plan.  [*Id.*].  In this case, Plaintiff obtained income through both such sources:  receiving a total of $13,500 paid over 18 months through private disability insurance, as well as monthly Social Security disability income in the current amount of $1,814 per month.  [Plaintiff Dep., Ex. B at 141:1-11 and Dep. Ex. 1 at 11].  In addition to the several other benefits set forth above, these alternate sources of income ordinarily would not be available to normal retirees or surviving spouses, and the Department does not offset such income from a disabled retiree's monthly disability benefit.  Accordingly, the COLA for normal retirees serves the legitimate interest of attempting to equalize post-retirement benefits.

Also, the decision not to provide a COLA for disability benefits is rationally related to the legitimate interest in preserving cost. "[C]ost is a rational basis for treating people differently." *Irizarry v. Bd. of Educ. of City of Chicago*, 251 F.3d 604, 611 (7th Cir. 2001). In *Kralemann*, differences in pension benefits offered, including declining to provide a COLA for disability retirees, were rationally related to the legitimate interest in ensuring a financially sound pension system. *Kralemann* at *10. Similarly here, the fund drafters could have considered the various benefits afforded to disabled retirees and determined that an additional benefit of a COLA would be cost prohibitive. Considering disability benefits are provided at the time of retirement due to a disability, as opposed to retirement when reaching a certain age or years of service benchmark, a disabled retiree's benefits can begin earlier in life and extend over a much longer period of time, imposing a significant cost. Indeed, when the County studied the potential cost, the actuary determined that it would require an additional 3% of Department payroll to sufficiently fund the COLA for disabled retirees. [Doc. 44-3 pages 87-130 (Dilts Dep. Ex. 8)]. Thus, the decision not to provide this additional benefit is rationally related to the legitimate interest of preserving cost.

Finally, the provision of a COLA benefit only to normal retirees is rationally related to the legitimate government interest in discouraging experienced members of the force from seeking early retirement. In *Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 756-57 (2d Cir. 1991), a benefit available only to regular retirees from the New York City Police Department did not violate equal protection. There, the police officers' retirement fund provided for supplemental payments to "for service" retirees only (those with 20 years of service), and such payments were not similarly provided to officers who retired before vesting or due to a disability. *Id.* at 755. These non-"for service" retirees, including disabled retirees, alleged that the failure to provide them with the same supplemental payments violated equal protection. *Id.* However, the Court found that the plan's benefits were rationally related to a legitimate government interest in encouraging

continued service of experienced officers. *Id.* at 756. The Court noted that disabled retirees generally work for a shorter period of time, thereby making lower overall contributions to the fund, and received non-taxable benefits at retirement. *Id.* Such favorable benefits, the Court explained, might encourage a member to seek classification as "disabled" in order to receive such benefits. *Id.* In turn, the provision of an extra benefit to normal, "for-service" retirees was rationally related to the legitimate government interest of encouraging experienced officers to remain with the department until normal retirement. *Id.*

Similar to the benefit in *Castellano*, the COLA for normal retirees in this case serves the legitimate goal of encouraging experienced officers to work until their normal retirement date. Again, the COLA for retirement benefits only applies when an officer retires after reaching age 60 (or age 55 with 20 years of service). [Doc. 44-3 pages 5-49 (Dilts Dep. Ex. 2)]. Moreover, this benefit is extended to normal retirees who do not receive other benefits earlier in life, similar to those provided to disabled officers at the time of their retirement. In this way, the COLA is a benefit offered to normal retirees to encourage officers to remain with the Department after they have obtained several years of experience. *See Clark v. United States*, 691 F.2d 837, 842 (7th Cir. 1982) ("Attracting and retaining qualified employees is a legitimate state objective that is rationally achieved by a retirement plan offering economic inducement in the form of a cost-of-living increase."). Such treatment is rationally related to the legitimate interest in encouraging officers to work until their normal retirement.

In sum, Plaintiff would have the Court ignore all of these benefits and instead conclude that the one difference he identifies, the lack of a COLA, demands a finding that a constitutional violation occurred. Specifically, Plaintiff demands that he retain all of his favorable benefits that normal retirees do not receive – lifetime monthly tax-free benefit based on 25 assumed years of service, refund of contributions plus interest, medical expense reimbursements, life insurance, etc. – and also be afforded a COLA. However, this is not what the Fourteenth Amendment demands. It does not demand

"mathematical nicety" or exact equality amongst individuals who are not similarly situated.  *Dandridge*, 397 U.S. at 485.  Several rational bases exist for the provision of a COLA to certain retirees but not to disabled retirees.  Accordingly, for this reason, and the several reasons set forth above, there is no violation of the Equal Protection Clause.  Summary judgment in favor of Defendants is warranted.

### D.     Plaintiff's Indiana Statutory Claim Must Be Dismissed.

Plaintiff's Indiana law claim is based on a statutory provision for which there is no private right of action, thus his claim must be dismissed.  Notwithstanding this failing, Plaintiff cannot maintain that his disability benefits are unreasonable, and his state law claim should be dismissed based on that separate and independent reason.

### 1.     The Statute Does Not Provide A Private Right Of Action.

Plaintiff alleges that the lack of a COLA to disability benefits under the Benefit Plan cause such benefits to be unreasonable and in violation of Indiana Code § 36-8-10-15.  This provision states that departments may offer disability benefits and that "[b]enefits payable as a result of line of duty activities . . . must be in reasonable amounts."  Ind. Code § 36-8-10-15.  However, Plaintiff makes no argument setting forth the existence of a private right of action under this statute, and none exists. The Indiana "General Assembly often creates rights of action using clear language, so its omission of such language is evidence that it did ***not*** intend to create a private remedy."  *Shirey v. Flenar*, 89 N.E.3d 1102, 1105 (Ind. Ct. App. 2017) (internal citations and quotations omitted) (emphasis added).  Thus, courts are "reluctant to find an implied right of action."  *Id.*

The statute does not provide a private right of action related to an officer's disability benefits. Rather, the Chapter expressly provides only a limited method of judicial review with respect to an officer's dismissal, demotion, or suspension.  *See* Ind. Code § 36-8-10-11.  This limited right to judicial review applies in only certain cases, and then only in the case of an administrative appeal.  *Id.*  Indeed, by comparison, the Indiana Court of Appeals has declined to apply this limited right of judicial review

to claims involving the denial of disability benefits.  *See Mikulich v. Lake Cty.*, 96 N.E.3d 666 (Ind. Ct. App. 2018) (affirming dismissal of request for judicial review of decision denying disability benefits). The Indiana General Assembly could have elected to provide a broader right to judicial review, but it declined to do so.  Further, no court has interpreted Ind. Code § 36-8-10-15 as providing a private right of action.  "Courts in this district have generally agreed that recognizing an implied right of action is a step to be taken, if at all, by the Indiana courts and not the federal courts."  *Caldwell v. Klemz*, No. 2:14-CV-455, 2017 WL 4620693, at *13 (N.D. Ind. Oct. 12, 2017) (internal citations and quotations omitted).  Thus, Plaintiff has no right to bring a civil claim under Ind. Code § 36-8-10-15, and this claim must be dismissed.

### 2.    The Disability Benefit Is Reasonable.

Even if Plaintiff had a private cause of action to enforce an alleged violation, Plaintiff cannot establish a statutory violation.  While the statute offers no definition of a "reasonable amount," Plaintiff's disability benefits are provided in reasonable amounts.  Plaintiff has received a disability benefit equal to $1,848.61 per month since June 2003, a total of $22,183.32 per year, tax free.[10] [Plaintiff Dep., Ex. B at 93:5-21, 152:6-23, 156:2-19 and Dep. Exs. 11, 21, 47; Doc. 44-3 page 61 (Dilts Dep. Ex. 4)].  At the time of his separation, Plaintiff's annual salary used to compute his benefits was $36,592; thus, his disability benefit is 60% of his prior salary, which itself was taxable.  [Doc. 44-3 page 61 (Dilts Dep. Ex. 4)].  This benefit was provided at the time of his separation without limitation based on his age or years of service and endures until his death.  [Dilts Decl., Ex. A, ¶ 12; Doc. 44-3 page 61 (Dilts Dep. Ex. 4)].  Further still, Plaintiff's monthly benefit was calculated assuming he worked 25 years until his normal retirement date, more than four times longer than his actual six years of service.  [Dilts Decl., Ex. A, ¶ 12; Doc. 44-3 pages 66-85 (Dilts Dep. Ex. 5)].  In addition, as a

---

[10] As of June 2020, Plaintiff has received $377,116.44 in disability benefits from the Department Benefit Plan ($22,183.32/year x 17 years).

disability retiree, Plaintiff was entitled to a lump sum refund of retirement contributions plus interest in the amount of $10,733.07, a $25,000 life insurance benefit, and reimbursement for out-of-pocket medical expenses associated with his disability for the rest of his life.   [Plaintiff Dep., Ex. B at 152:6-153:20 and Dep. Ex. 11].  Moreover, as a disabled individual unable to work, Plaintiff receives Social Security disability income in the amount of $1,814 per month (for which he receives a COLA).  When combined with his disability benefit, Plaintiff earns 120% of his average annual salary at the time of his retirement, and that amount is largely tax free, compared to his salary while working, which was subject to state and federal income taxes and withholdings.[11]

Ignoring any discussion as to the calculations underlying Plaintiff's benefit, Plaintiff alleges without support that his amount cannot be deemed "reasonable" under Indiana law unless it is assigned a COLA.  [Doc. 45 at 20-22].  In support, Plaintiff points to other government retirement plans that provide for such COLA increases.  [Doc. 45 at 21-22].  However, the statute neither requires that disability benefits increase with inflation or that they be equal across different retirement offerings. Indiana law requires only that the benefits be in "reasonable amounts."  Plaintiff has not established that these amounts are not reasonable, and summary judgment should be entered on this claim.

### E.   Plaintiff's Claims Are Barred By The Terms Of His Valid Release Agreement.

Plaintiff executed a full release of all claims which applies to bar his claims against Defendants. "It is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990) (quotation marks omitted).  "Absent ambiguity, the court is to look only to the plain language of the [r]elease to ascertain the parties' intent." *Freeman v. Agricor, Inc.*, No. 1:09-CV-160, 2009 WL 2611761, at *5 (N.D. Ind. Aug. 24, 2009).

---

[11] [($1,848.61 x 12) + ($1,814 x 12)] ÷ ($36,592) = 1.20.

Plaintiff previously entered into a settlement agreement in resolving a prior lawsuit against Lake County entities.  The release agreement executed by Plaintiff provides that Plaintiff forever releases and discharges Lake County and all of its related entities, officers, employees, etc. from "any and all claims . . . known or unknown . . . including but not limited to those . . . growing out of or arising from Ostrowski's employment with Defendants and termination of such employment which could have been discovered . . . ." [Plaintiff Dep., Ex. B at 166:23-168:6 and Dep. Ex. 6].  Courts have consistently found that this type of language is "clear and unambiguous" and written to preclude the former employee from bringing any claim that arises out of the employment relationship or termination thereof.  *See, e.g.*, *Freeman*, 2009 WL 2611761 at \*4.

At a minimum, Plaintiff had constructive knowledge, if not actual knowledge, of his present claims relating to the lack of a COLA at the time he signed the 2017 release agreement.  Plaintiff knew he did not receive a COLA and that others did no later than in 2004, when he first started petitioning for a COLA for disability benefits, soon after his disability retirement.  [Plaintiff Dep., Ex. B at 98:1-102:13, 113:11-114:19, 117:7-118:6, 169:24-171:9; Doc. 44-1 at ¶ 14].  Plaintiff also spoke to several former Lake County Council members about adding a COLA to the disability benefit sometime prior to 2007 and 2014, years prior to signing the release.  [Plaintiff Dep., Ex. B at 117:7-118:6, 169:24-171:9].  Beyond that, Plaintiff filed a lawsuit alleging disability discrimination in May 2016 with respect to his employment separation from the E-911 Board, again well prior to the February 2017 release. [Plaintiff Dep., Ex. B at 41:17-21, 43:3-10 and Dep. Ex. 5; *see Ostrowski v. Lake County et al.*, Case No. 2:16-cv-00166 (N.D. Ind. filed May 12, 2016)].  Additionally, Plaintiff spoke at the Lake County Council meetings in October 2016, July 2017, and November 2017 in support of the disability COLA. [Doc. 44-1 at ¶ 14; Plaintiff Dep., Ex. B, Dep. Exs. 13-15].  By Plaintiff's own admission, he has been advocating for the COLA for many years, since at least 2004, all the while knowing that he does not receive a COLA for his disability benefits, and even while invoking his rights under the ADA in a

separate lawsuit.  At the time he signed the settlement agreement releasing all claims, Plaintiff had

reason to know, and likely had actual knowledge, of his current claims related to such benefits, and

released and waived such claims upon executing the settlement agreement.  Therefore, Plaintiff's

claims in this case are barred by the full release of claims he executed in February 2017.

F.     **Plaintiff Is Not Entitled To Injunctive Relief.**

Plaintiff's motion for partial summary judgment as to his constitutional and state law claims

also seeks injunctive relief and an award of special damages.  As demonstrated above, Plaintiff cannot

demonstrate success on the merits of his legal claims, and summary judgment in favor of Defendants

and against Plaintiff is warranted.  Thus, Plaintiff is not entitled to any such relief.

**IV.   Conclusion.**

As demonstrated above, no genuine dispute of material fact exists, and summary judgment in

favor of Defendants is warranted on all claims.  Defendants respectfully ask that the Court grant

summary judgment in their favor as to all claims and award all other appropriate relief.

Respectfully submitted,

*s/ Jackie S. Gessner*
Kenneth J. Yerkes
Bart Karwath
Jackie S. Gessner
**BARNES & THORNBURG LLP**
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:     (317) 236-1313
Facsimile:     (317) 231-7433
E-mail:          ken.yerkes@btlaw.com
                    bart.karwath@btlaw.com
                    jackie.gessner@btlaw.com

*Counsel for Defendants*

34

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2020, I caused the foregoing to be electronically filed with the

Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

*s/ Jackie S. Gessner*
Jackie S. Gessner
