IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THOMAS OSTROWSKI,                    )
                                     )
            Plaintiff,               )
                                     )
      v.                             )          No. 2:18-cv-00423-RLM
                                     )
LAKE COUNTY, INDIANA, et al.,        )
                                     )
            Defendants.              )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR ATTORNEY'S FEES**

### INTRODUCTION

The defendants' ("County's") fee request in this case is extraordinary. At present, it is seeking

nearly $300,000.00 in attorneys' fees from one of its citizens—a retired police officer who became

disabled in the line of duty—for litigating a case that does not (and was never going to) revolve around

any disputed factual issues, that merely involves the application of a well-established legal standard to

these undisputed facts, that required only two depositions and minimal documentary discovery, and

that required the briefing of only two substantive motions (the parties' inter-related summary-

judgment requests). Of necessity, the lion's share of this brief is devoted to the excessiveness of the

County's fee request. But its request fails for a more fundamental reason: the County is not even

entitled to fees. Its sole basis for seeking fees—a Settlement Agreement and Release ("Settlement

Agreement") that the plaintiff signed in 2017 to resolve unrelated litigation (Dkt. 48-2 at 158-62)—

simply does not provide for fee shifting in the event that Mr. Ostrowski pursues a claim that was

previously released in that Settlement Agreement (as this Court concluded he did). Rather, in stark

contrast to countless fee-shifting provisions litigated in state and federal courts, the applicable

provision of that agreement provides only that the County is entitled "to seek" attorneys' fees. In

other words, it is simply a reminder to Mr. Ostrowski, who initiated his unrelated litigation *pro se*, that the pursuit of a claim that is rendered frivolous by the release contained within the Settlement Agreement may result in fee liability.  The County does not seek fees on this basis and clearly neither Mr. Ostrowski's claims on the merits nor his argument that the release does not apply to this case were frivolous.  The County's fee motion must be denied in its entirety.

ARGUMENT

## I.     The Settlement Agreement signed by Mr. Ostrowski does not provide for fee-shifting

Of course, "[t]he so-called 'American Rule' governing the award of attorneys' fees in litigation in the federal courts is that attorneys' fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract' providing therefor."  *F.D. Rich Co., Inc. v. U.S. for Use of Indus. Lumber Co., Inc.*, 417 U.S. 116, 126 (1974) (citation omitted).  The County recognizes this, but contends that Mr. Ostrowski is liable for the County's fees due to the Settlement Agreement that he entered in 2017.  In advancing its argument, the County never actually quotes the applicable provision from that agreement:

> In the event Ostrowski or Defendants bring a lawsuit relating to a breach of, or the enforcement of, this Agreement, or any of the Released Parties assert this Agreement as a defense to an action brought by or on behalf of Ostrowski, the prevailing party <u>shall be entitled to seek</u> attorneys' fees from the other party.

(Dkt. 48-2 at 161 [emphasis added]).  This is simply not a fee-shifting provision, for an entitlement to "seek" a substantive benefit is different in kind than an entitlement to the substantive benefit itself.  Rather, as noted at the outset, this provision is simply a reminder to Mr. Ostrowski—who had originally filed the unrelated litigation *pro se*—that he might be liable for the County's attorneys' fees if he initiated a lawsuit that is rendered utterly frivolous by virtue of the release contained within the Settlement Agreement.  *See, e.g., Smith v. U.S. Dep't of Educ.*, No. 1:20-CV-474, 2021 WL 1783312, at *6 (N.D. Ind. May 5, 2021) (reiterating courts' authority to impose sanctions, including attorneys' fees, for various forms of bad-faith litigation conduct).

2

Certainly this Court concluded that Mr. Ostrowski's claims in this action were barred by the Settlement Agreement.  (*See* Dkt. 58 at 4-7).  Nonetheless, Mr. Ostrowski raised two arguments in opposition to the County's reliance on the language of the release contained within that Settlement Agreement: that he is not barred from pursuing claims related to the failure to provide a cost-of-living adjustment in monthly payments after the February 2017 execution of the Settlement Agreement, and that he is not barred by the Settlement Agreement from pursuing claims against defendants other than Lake County itself.  (*See* Dkt. 49 at 9-16).  Whether or not these arguments are meritorious will ultimately be resolved by the Seventh Circuit.  But they were properly supported by legal authority and coherent argument, and they were not frivolous.  The County does not contend to the contrary.

When parties intend to include a fee-shifting provision within a contract, they make unequivocally clear that one party is entitled to the substantive benefit itself.  For instance, in *Rissman v. Rissman*, 229 F.3d 586 (7th Cir. 2000), the Seventh Circuit addressed a contractual fee-shifting provision providing that the prevailing party in a dispute "<u>shall be reimbursed</u> by the losing party or parties for all reasonable costs and attorneys' fees incurred."  *Id.* at 587 (emphasis added).  In *Matthews v. Wisconsin Energy Corp., Inc.*, 642 F.3d 565 (7th Cir. 2011), the contractual language similarly provided that the prevailing party "<u>shall be entitled to recover</u> her or its reasonable attorneys fees."  *Id.* at 572 (emphasis added).  And in *Cintas Corp. v. Perry*, 517 F.3d 459 (7th Cir. 2008), the fee-shifting provision provided that the party "<u>will pay</u> all litigation costs and expenses and . . . reasonable attorney's fees."  *Id.* at 468 (emphasis added).  Contractual fee-shifting provisions contemplated by district courts within this circuit are just as explicit.  *See, e.g.*, *NRRM, LLC v. Mepco Fin. Corp.*, No. 10 C 4642, 2015 WL 1501897, at *2 (N.D. Ill. Mar. 27, 2015) ("shall be <u>entitled to recover</u> . . . reasonable attorneys' . . . fees") (emphasis added); *Dempsey v. Carter*, No. 1:04CV1308-JDT-TAB, 2006 WL 3590191, at *4 (S.D. Ind. Dec. 8, 2006) ("shall be <u>entitled to seek and obtain</u> . . . reasonable attorneys' fees") (emphasis added), *aff'd*, 247 Fed. App'x 21 (7th Cir. 2007).  As are provisions that have been addressed by

3

Indiana's appellate courts.  *See, e.g., Reuille v. E.E. Brandenberger Constr. Co., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008) ("shall be <u>entitled to reasonable costs and expenses</u>, including attorney fees") (emphasis added); *Boyer Constr. Grp. Corp. v. Walker Constr. Co., Inc.*, 44 N.E.3d 119, 121-22 (Ind. Ct. App. 2015) ("shall be <u>entitled to recover</u> reasonable attorney's fees") (emphasis added) (alteration omitted); *Yellow Book Inc. v. Cent. Ind. Cooling & Heating, Inc.*, 10 N.E.3d 22, 28-29 (Ind. Ct. App. 2014) ("will be <u>liable</u> for all . . . reasonable costs and expenses . . . including . . . reasonable attorney's fees") (emphasis added), *trans. denied*; *Gerstbauer v. Styers*, 898 N.E.2d 369, 379 (Ind. Ct. App. 2008) ("shall <u>pay</u> the other party's reasonable legal costs and attorney's fees") (emphasis added); *Willie's Constr. Co., Inc. v. Baker*, 596 N.E.2d 958, 963 (Ind. Ct. App. 1992) ("<u>shall pay</u> all of Contractor's attorney fees and costs") (emphasis added), *trans. denied.*

The bottom line is that an overwhelming amount of authority exists from which the parties could have drawn inspiration had they intended that the Settlement Agreement unequivocally mandate fee shifting.  They did not do so, and the relevant contractual language—"shall be entitled to seek attorneys' fees"—confers a procedural right (the right to seek) rather than a substantive benefit (the right to attorneys' fees).  As indicated, this is not a meaningless benefit: confronted with a plaintiff who had initiated litigation *pro se*, the County doubtless desired to ensure that he was apprised that initiating future litigation rendered frivolous by the language of the Settlement Agreement could result in him being held responsible for the County's attorneys' fees.  That is enough to resolve the County's fee request.  But, if it were not, "[c]ourts across the nation have frequently followed the 'narrow construction' model of interpreting attorney fee provisions," whereby fee-shifting provisions must be "strictly construed" to avoid creating a fee entitlement that the parties did not intend to create.  *See BKCAP, LLC v. Captec Franchise Trust 2000-1*, 701 F. Supp. 2d 1030, 1035-36 & n.6 (N.D. Ind. 2010) (collecting cases).  Any ambiguity in the fee-shifting provision must therefore be resolved against the County.  There is no fee shifting here.  This Court need proceed no further.

4

## II.   Were the Settlement Agreement deemed to contain a fee-shifting provision, that provision would be unenforceable as violative of public policy

Under Indiana law, "[w]hen a contract allows for the recovery of attorney fees, the provision will be enforced according to its terms unless it violates public policy." *Osler Inst., Inc. v. Forde*, 386 F.3d 816, 818 (7th Cir. 2004) (citing *Harrison v. Thomas*, 761 N.E.2d 816 (Ind. 2002)).   The circumstances of the County's fee request here must be reiterated: the County is seeking nearly $300,000.00 in attorneys' fees against one of its own citizens—a former police officer who was forced into premature retirement after becoming disabled in the line of duty, no less—for pursuing non-frivolous claims that the County has violated and continues to violate the U.S. Constitution and Indiana law.   In these circumstances, enforcing a contractual fee-shifting provision against Mr. Ostrowski serves primarily to discourage him from attempting to ensure the County's compliance with legal norms, and if it were to allow for fee shifting (which again, it does not) the provision would violate sound public policy.

At least two states consider contractual fee-shifting provisions to always (or almost always) be unenforceable as against public policy.  *See Stewart v. Bennett*, 727 N.W.2d 424, 429 (Neb. 2007); *Worth v. Aetna Cas. & Surety Co.*, 513 N.E.2d 253, 257-58 (Ohio 1987).  While Indiana does not go quite so far, in various contexts numerous courts applying rules materially identical to Indiana's—which focuses on whether a provision contravenes "public policy"— have concluded that contractual attempts to chill would-be plaintiffs from attempting to vindicate rights similar to those at issue here are unenforceable.  For instance, in *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003), the Sixth Circuit concluded that a cost-splitting provision in an arbitration agreement was enforceable because it "would deter a substantial number of [persons] from seeking to vindicate their statutory claims."  *Id.* at 669.  This was so, the court held, because the potential costs of arbitrating a dispute would "easily reach thousands, if not tens of thousands of dollars," far exceeding the means of most

former employees.  *Id.*  Identical conclusions were reached by the Ninth Circuit in *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 893-95 (9th Cir. 2002), and by the D.C. Circuit in *Cole v. Burns International Security Services*, 105 F.3d 1465, 1483-86 (D.C. Cir. 1997).  And the district court in *Lou v. Ma Laboratories, Inc.*, No. C 12-0509 WHA, 2013 WL 2156316 (N.D. Cal. May 17, 2013), addressed the enforceability of a fee-shifting provision within an arbitration agreement insofar as it would "impede[] the vindication" of a party's rights and "would create a sense of risk and uncertainty . . . that could discourage the arbitration of meritorious claims." *Id.*, 2013 WL 2156316, at *5.  *See also, e.g.*, *Mertens v. Smith Barney, Inc.*, 181 F.R.D. 243, 256 (S.D.N.Y. 1998) (arbitration agreements unenforceable when they provide for lesser relief than would be available in a judicial forum).

To be sure, this jurisprudence most frequently arises in the context of fee- or cost-shifting provisions contained within contractual arbitration clauses.  But the principle is identical when fee-shifting is contemplated as part of a contractual release of claims: a plaintiff with a potentially colorable claim will be deterred from seeking vindication of his rights by the mere prospect of a sizable fee award against him.  This principle is heightened in the present context, where ensuring that the courthouse doors remain open to plaintiffs with potentially meritorious constitutional claims is paramount, for "it is always in the public interest to prevent violation of a party's constitutional rights." *Huntley v. Wexford of Ind., LLC*, No. 3:18-CV-205-PPS-MGG, 2018 WL 4039362, at *20 (N.D. Ind. Aug. 22, 2018) (quoting *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010)).  This is not to say that a party may not waive his right to pursue legal claims that would otherwise be available to him—even constitutional claims.  Nor is it to say that ambiguous fee-shifting provisions in other contexts may not be given their full effect—the public interest in ensuring that commercial disputes are resolved may not be as weighty.  But where, as here, a plaintiff possesses non-frivolous arguments both that his constitutional rights are being violated and that he has not released the claims he seeks

to pursue, public policy strongly favors ensuring that he can seek to vindicate his rights without the powerful deterrent effect of a potential fee award against him.[1]

If the applicable language of the Settlement Agreement actually were a fee-shifting provision—which, again, it is not—that provision would be unenforceable as against public policy.

## III.     Even if fees are awarded, the County's request should be reduced dramatically

### A.  No party other than Lake County is entitled to its attorneys' fees, and the fee request must be reduced accordingly

Mr. Ostrowski named four defendants in this litigation: Lake County, the Lake County Sheriff ("the Sheriff"), the Lake County Treasurer ("the Treasurer"), and the Pension Committee of the Pension Plan of the Lake County Sheriff ("the Pension Committee").  (Dkt. 12).  Only one of these defendants, however—Lake County itself—was a party to the Settlement Agreement that resolved Mr. Ostrowski's unrelated litigation.  (*See* Dkt. 48-2 at 158).  While this Court concluded that the other parties (the Sheriff, the Treasurer, and the Pension Committee) were also released parties under the Settlement Agreement, it reached this conclusion not because they were themselves parties to the Settlement Agreement but because they were third-party beneficiaries of that agreement.  (*See* Dkt. 58 at 5-6).  But "even the relatively generous Seventh Circuit . . . has been unwilling to construe fee-shifting provisions in favor of third-party beneficiaries."  *NRRM, LLC v. Mepco Fin. Corp.*, No. 10 C 4642, 2015 WL 1501897, at *5 (N.D. Ill. Mar. 27, 2015).  Rather, "courts that have considered the rights of third-party beneficiaries to enforce contractual fee-shifting provisions . . . apply[] what could be called a reciprocity principle" under which they are not entitled to attorneys' fees when they prevail unless they would also have been liable for fees had they lost.  *Id.*, 2015 WL 1501897, at *5-6.

---

[1]     Suppose, for instance, that the claims that Mr. Ostrowski raised in this action had not been released by the Settlement Agreement that he signed to resolve his unrelated litigation.  Or that he contemplates raising different claims in the future that he does not believe to have been released (or against parties that he does not believe have been released) even though he can never be entirely sure.  An agreement containing a fee-shifting provision serves as a powerful disincentive to any attempt to vindicate his rights.  That cannot be so.

In *NRRM*, the district court surveyed decisions from the Tenth and Sixth Circuits—as well as from state courts in Illinois and California—and concluded that "a third-party beneficiary can invoke a fee-shifting provision only if it, too, could be held liable under the provision were the shoe on the other foot." *Id.*, 2015 WL 1501897, at *5; *see also, e.g.*, *In re Relativity Fashion, LLC*, 565 B.R. 50, 62 (S.D.N.Y. 2017). As the *NRRM* court noted, this "reciprocity principle" was also implicitly invoked by the Seventh Circuit in *Rissman*, in which the court "refused to allow a prevailing defendant to collect attorney fees pursuant to a contractual fee-shifting clause on the ground that he had 'signed the contract exclusively in his capacity as trustee of the Tiger Stock Trust,' yet was 'sued exclusively in his individual capacity.'" *NRRM*, 2015 WL 1501897, at *5 (quoting *Rissman*, 229 F.3d at 588). To be sure, both *Rissman* and *NRRM* applied Illinois law, but they did so (*NRRM* explicitly and *Rissman* implicitly) on the basis of state law requiring that contractual fee-shifting provisions be "strictly construed." *See id.* As noted, Indiana law (and the law in other jurisdictions) imposes the same limitations on fee-shifting provisions. *See BKCAP, LLC v. Captec Franchise Trust 2000-1*, 701 F. Supp. 2d 1030, 1035-36 & n.6 (N.D. Ind. 2010) (collecting cases).

There can be no doubt that the parties to this litigation who were not parties to the Settlement Agreement—the Sheriff, the Treasurer, and the Pension Committee—could not be held liable for fees under that agreement's fee-shifting provision, for Lake County clearly cannot obligate them to abide by terms to which they have not agreed. "Third party beneficiaries have no contractual obligations, only benefits." *Implement Serv., Inc. v. Tecumseh Prods. Co.*, 726 F. Supp. 1171, 1183 (S.D. Ind. 1989) (Tinder, J.) (citing *Evansville & S.I. Traction Co. v. Evansville Belt Ry. Co.*, 87 N.E. 21, 23-24 (Ind. Ct. App. 1909)); *see also NRRM*, 2015 WL 1501897, at *6 ("[I]f the tables were turned, the court would have little difficulty concluding that Choice—a non-signatory to the Dealer Agreement—could never be liable for NRRM's attorney fees."). Because these defendants cannot be liable to Mr. Ostrowski for attorneys' fees, under the reciprocity principle articulated in *NRRM* and similar cases, he cannot

be liable to them. The County's fee request does not differentiate between fees sought by particular defendants. Nonetheless, because the four defendants stand on equal footing in this litigation, there is no reason to distribute their fee shares disproportionately; this is so regardless of who actually wrote checks to the County's attorneys, for one quarter of counsel's labor is clearly attributable to each defendant. To account for the fact that only one of four defendants would be entitled to attorneys' fees, even if a fee award were otherwise appropriate only 25% of the total amount of the County's reasonable attorneys' fees should be awarded (and those should be awarded to Lake County).

**B. The amount of fees sought by the County is not reasonable**

The Settlement Agreement signed by Mr. Ostrowski references "attorneys' fees," not "reasonable attorneys' fees." Nonetheless, courts strictly construe fee-shifting provisions without this explicit limitation to contemplate only an award of "reasonable" attorneys' fees. *See, e.g.*, *Bank of Am., N.A. v. Oberman, Tivoli & Pickert, Inc.*, 12 F. Supp. 3d 1092, 1100 (N.D. Ill. 2014) (Illinois law). After all, a contract contemplating an award of *unreasonable* attorneys' fees would clearly be unconscionable. Computing a reasonable fee award, of course, requires application of the familiar "lodestar" method, where the number of hours reasonably expended are multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983).

1. <u>The hourly rates sought by the County are not reasonable</u>

The County's attorneys seeks compensation at astronomical non-local hourly rates: $380 to $395 for Ms. Gessner (admitted in 2015), $635 to $670 an hour for Mr. Karwath (admitted in 1991), and $685 to $705 an hour for Mr. Yerkes (admitted in 1983), as well as $290 an hour for Ms. Larson (a paralegal). These hourly rates are likely not even appropriate for the Indianapolis market. But, in this case, there was no compelling reason for the County to employ non-local counsel, and they should therefore be limited to compensation at prevailing rates in northwest Indiana.

The hourly rate customarily charged by an attorney is presumptively appropriate, but that rate is "a presumptive rather than dispositive figure." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993). However, when a party chooses to hire an out-of-town attorney seeking compensation at an out-of-town rate, consideration should be given to whether legal assistance could have been secured from a local attorney charging lower rates. As the Seventh Circuit has held:

> We think that a judge . . . has discretion to consider the reasonableness of an out of town attorney's billing rate if there is reason to believe that services of equal quality were readily available at a lower charge or rate in the area where the services were to be rendered.
>
> If, however, a party does not find counsel readily available in that locality with whatever degree of skill may reasonably be required, it is reasonable that the party go elsewhere to find an attorney.

*Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982). An out-of-town attorney might be necessary when litigation involves "a narrow area of law, such as admiralty law, patent law, or antitrust and other complex litigation," *id.*, or if a party is unable to find a qualified local attorney despite a diligent search, *see Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 (7th Cir. 2003). In *Mathur*, the Seventh Circuit's most extensive discussion of the matter, the court thus allowed compensation of the plaintiff's attorneys' fees at a higher out-of-town rate when no local attorneys were available, either due to insufficient experience or due to conflicts of interest given that the defendant was a large local university. *Id.* at 744.

Not so here. The defendants are several governmental officials that are routinely (and competently) represented in litigation, including civil rights litigation, by their local counsel. Indeed, local attorneys initially appeared to represent the defendants, and one of them (Mr. Kopack) remains counsel of record in this case. A Westlaw search reveals that these attorneys routinely represent their governmental clients before this Court in constitutional and other litigation. And, despite the County's characterization of this case as involving "complex litigation," there was nothing so complex about these proceedings to justify non-local counsel. To the contrary, the primary issue involved the

application of an established legal standard (low level scrutiny under the Equal Protection Clause) to facts that were never undisputed and were never going to be disputed (the County's policies encapsulated in two related, and easily digestible, pension plans).   If anything, the other issues presented by this case—the application of the Settlement Agreement and the plaintiff's state-law claim—were even simpler.  The litigation required only two depositions and limited documentary discovery.  No meaningful discovery disputes arose.  The entire case was resolved in 59 docket entries.

On top of this, although certainly Mr. Karwath and Mr. Yerkes are experienced lawyers, none of the defendants' attorneys in this litigation appear to have brought to the table any significant expertise in civil-rights litigation.  A Westlaw search for decisions in cases litigated by Mr. Karwath and Mr. Yerkes reveals that they primarily handle commercial disputes or represent employers defending against claims of workplace discrimination.  A similar search for Ms. Gessner reveals that she has appeared in only six cases (including this one) resulting in a decision available in a commercial database; aside from this case, they all appear to have concerned claims of employment discrimination. Indeed, the fact that local counsel was relied upon to negotiate, draft, and finalize the primary documents in this case—the Settlement Agreement and the two pension plans—is powerful evidence that they were competent to handle the routine legal issues that arose concerning those documents (and the fact that they were already familiar with these documents certainly would have saved time and resources).  Nor does this case present circumstances remotely similar to *Mathur*, where a plaintiff was unable, despite attempts to do so, to secure local counsel.  The conflict-of-interest issues that rendered local attorneys in that case unable to pursue litigation against a local university are clearly not present here, where the defendants *are* the large local entities.  Not only did they possess qualified local counsel already, but they surely had their pick of any number of local attorneys beyond their regular counsel if they so desired.  Fees should be compensated at rates charged by attorneys in northwest Indiana.

A survey of cases addressing local rates (albeit from seven or eight years ago) reveals that these rates typically range from approximately $150 an hour to approximately $300 an hour.  *See Faust v. Menard*, No. 2:11-CV-425-JM, 2014 WL 1259963, at *2-3 (N.D. Ind. Mar. 26, 2014) (describing evidence establishing an hourly rate of $275 an hour for an attorney with fifteen years' experience and $175 an hour for two attorneys with five years' experience, and awarding $300 an hour to an attorney with 23 years' experience); *D.S. v. E. Porter Cnty. Sch. Corp.*, 981 F. Supp. 2d 805, 812 (N.D. Ind. 2013) ($150 an hour "for the work of partners at a law firm in Northwest Indiana"); *Rayter v. Crawford Avenue Anesthesia Provider Servs., LLC*, No. 2:12-CV-75-RLM-APR, 2013 WL 5498255, at *5 (N.D. Ind. Oct. 1, 2013) ($140 an hour for attorney licensed in 2009 and $180 an hour for attorney licensed in 1992); *Eagle Servs. Corp. v. H2O Indus. Servs., Inc.*, No. 2:02-CV-36-PRC, 2012 WL 3255606, at *3 (N.D. Ind. Aug. 8, 2012) ($195 an hour for attorney licensed in 1994 and $225-250 an hour for attorney licensed in 1972).  Given this jurisprudence, the plaintiff recommends that Ms. Gessner be compensated at an hourly rate of $200 an hour and that Mr. Korwath and Mr. Yerkes be compensated at an hourly rate of $325 an hour.  This represents slight upward departures from the most pertinent rates described in *Faust* (to compensated for the passage of time since *Faust*).  The plaintiff further recommends that Ms. Larson, a paralegal, be compensated at a rate of $125 an hour.  *See Parish v. City of Elkhart*, No. 3:07-CV-452, 2011 WL 1360810, at *4 (N.D. Ind. Apr. 11, 2011) (paralegal rate of $105 an hour reasonable in 2011).[2]

---

[2]    Even were it appropriate for the County to seek compensation at its attorneys' Indianapolis-area rates, the rates at which they seek compensation still appear unreasonable.  As described above none of the County's attorneys appear to have any significant experience in the civil-rights field and the fact that commercial clients or large (oftentimes national or international) corporations contesting highly disputed claims of employment discrimination might be willing to pay these rates says nothing about either whether it is reasonable for the County's attorneys to seek compensation at their typical rates when they handle cases outside their fields of concentration or whether these rates are reasonable in the civil-rights field.  The County fails on both fronts.

First, the typical billable rate commanded by any attorney is dictated, in large part, by that attorney's experience.  But experience as a general matter is not an adequate gauge of a reasonable rate when an attorney seeks compensation for representation outside of her area of concentration.  This Court addressed this issue compellingly in *Parish v. City of Elkhart*, *supra*, in which a former clerk to Justice Ginsburg who had been

### 2. The number of hours expended by the County is not reasonable

On top of the unreasonableness of the rates sought by the County's attorneys, the number of hours for which the County seeks compensation is not reasonable.

---

practicing law for more than forty years sought compensation at his "actual billing rate" despite the fact that he was working outside his "the area of his primary concentration":

> The problem here is that this case did not involve [their] areas of concentration. Not only is civil rights not his primary area of concentration, but it appears that Attorney Hodes has little experience in this area. Thus, it would be unreasonable to allow him to bill for this case at the same rate as he would bill for a case in his primary concentration. . . . Considering Attorney Hodes' lack of civil rights litigation experience, his work product, performance and result, this Court finds a fair rate to be $300 per hour [that is, 75% of the amount he charged in his primary area of concentration], a rate that he admittedly charges for a long-time client or under special circumstances.

*Id.*, 2011 WL 1360810, at \*4. Despite the fact that Mr. Ostrowski previously worked for the Sheriff and his claims arise out of the County's failure to provide him with cost-of-living increases in his post-employment benefits, this is no more an employment-discrimination case than were countless civil-rights cases also arising out of a plaintiff's relationship with his employer. *See, e.g., City of Ontario v. Quon*, 560 U.S. 746 (2010) (Fourth Amendment); *Gilbert v. Homar*, 520 U.S. 924 (1997) (Due Process Clause); *City of Charlotte v. Local 660, Int'l Ass'n of Firefighters*, 426 U.S. 283 (1976) (Equal Protection Clause); *Pickering v. Board of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563 (1968) (First Amendment).

And second, even were the County's attorneys experienced in the area of civil rights, the hourly rates at which they seek compensation are out of keeping with the rates charged by civil-rights attorneys in the Indianapolis area. In *Planned Parenthood of Indiana & Kentucky, Inc. v. Commissioner*, No. 1:16-cv-00763-TWP-DML, 2020 WL 906273 (S.D. Ind. Feb. 25, 2020), Judge Pratt recently awarded fees at a rate of $500.00 an hour to Kenneth Falk (the legal director of the ACLU of Indiana), $425.00 an hour to undersigned counsel, and $375.00 an hour to a third attorney employed by the ACLU of Indiana who has been practicing law since at least 2011. *Id.*, 2020 WL 906273, at \*2-3. (Counsel can represent that the rates of the attorneys at the ACLU of Indiana has risen since this decision, but the County seeks compensation at 2019 and 2020 rates.) That court previously described Mr. Falk as "[o]ne of the most experienced trial and appellate constitutional civil rights attorneys in Indianapolis," *Cerajeski v. Zoeller*, No. 1:11-cv-01705-JMS-DKL, 2016 WL 771977, at \*7 (S.D. Ind. Feb. 29, 2016) (describing Mr. Falk's earlier billable rate of $400.00 an hour)—a fact of which this Court is surely aware. The $500.00 rate commanded by Mr. Falk thus surely represents the upper limit of a reasonable rate for a civil rights attorney in the Indianapolis area. To be sure, rates commanded by a plaintiff's attorney may not be identical to those commanded by a defendant's attorney. But, in the experience of undersigned counsel, particularly in the civil-rights field the rates commanded by defense counsel will be *lower* than those commanded by a plaintiff's attorney—for defendant's attorneys will of necessity be required to compete for valuable government contracts. *See, e.g., Maynard v. Nygren*, No. 98 C 50193, 2002 WL 1931999, at \*1-2 (N.D. Ill. Aug. 20, 2002) (describing a "special blended rate" that defense counsel charged the McHenry County State's Attorneys Office for the work of anyone in counsel's firm and noting published rates for defense attorneys were "even less than those of plaintiff's counsel") (parentheses omitted). In any event, the Seventh Circuit has rejected the argument that "comparing the rates charged by [a defendant's] attorneys with those charged by the plaintiffs' attorneys is improper." *Chrapliwy*, 670 F.2d at 768 n.18; *see also Lynch v. City of Milwaukee*, 747 F.2d 423, 428 n.4 (7th Cir. 1984).

Demonstrating as much should require little citation. The County seeks compensation for a total of 636.2 hours (Dkt. 72-1 at 3)—representing nearly eleven hours for *every single docket entry* in this case. This is particularly astounding given that, with the exception of the County's answers and its summary-judgment briefing, every document filed in this case was filed by the plaintiff, was entered by the Court, or represented a routine motion that should have required minimal effort. While the reasonableness of hours expended on litigation may not always correlate to the number of docket entries—most notably when a case requires an inordinate amount of discovery or legal research—nothing unique about these proceedings justifies the exorbitant amount of time expended by the County's attorneys. As described above, there were only two depositions: the deposition of the County's designate comprises only 82 pages. (Dkt. 44-2). The County submitted only two factual exhibits on summary judgment: the plaintiff's deposition and a five-page affidavit from its Rule 30(b)(6) witness that largely recounted the same information about which he testified in his deposition. (Dkts. 48-1 & 48-2). Documentary discovery was minimal: the County introduced only 28 exhibits during the plaintiff's deposition, the vast majority of which were relied upon only to recount undisputed information already in the County's possession and virtually none of which were even cited in the County's summary-judgment briefing. (Dkts. 47 & 48-2 at 4-6). The legal research required to tee this case up for decision on summary judgment was extremely limited: the County's summary-judgment briefing relies primarily on a handful of easily discoverable cases (as well as one unpublished disposition of non-precedential value), which is wholly unsurprising given that the plaintiff's primary legal claim concerned the application of a well-established standard (low-level scrutiny) to undisputed facts.

The County's billing records include countless examples where multiple attorneys appear to have engaged in fundamentally the same task. They also include numerous entries where multiple attorneys simply "reviewed" an incoming electronic filing (oftentimes an inconsequential one and,

even when inconsequential, oftentimes a tasks that is billed at multiple increments of an hour), "analyzed" an incoming e-mail, or "strategized" about various vaguely described matters. Redundant, indefinite, and seemingly meaningless time entries, of course, are by definition unreasonable. Other entries are simply inexplicable: at one point Ms. Gessner bills 8.2 hours to travel to and attend a settlement conference while Mr. Karwath bills 7.1 hours to do the same *as well as* additional tasks. (Dkt. 72-1 at 67). And the County seeks compensation for no fewer than five multiple-attorney trips from Indianapolis to Lake County, which are by definition unreasonable given that there was no reason to hire out-of-town attorneys in the first place. It is virtually impossible to address the County's filing on a line-by-line basis and, as set forth below, this Court is not tasked with doing so. Several examples of counsel's billing practices suffice to demonstrate the gross excessiveness of the County's request.

<u>Initial Investigation and Research</u>

It appears that the County's attorneys spent approximately 80 hours conducting their initial review and investigation of this case, and conducting basic research into the plaintiff's legal claims. (Dkt. 72-1 at 9-10, 14-15, 19, 23, 28-29, 37).

Much of this appears to have consisted of communications with the County's in-house counsel or its previous attorneys, of "giving consideration" (or "attention") to various matters (whatever that means) or of internal "strategizing," and it also includes even more curious tasks such as generating a "case estimate" for the County (presumably not advancing the litigation at all), three-tenths of an hour of attorney time "reviewing final drafts of appearances" (drafts?), preparing for and conducting "witness interviews" (for more than twenty hours in a two-witness case), and even conducting "research" on undersigned counsel. In any event, this has never been a factually complex case; indeed, it has never been a "fact" case at all. As set forth below, the County's Rule 30(b)(6) designate was able to describe the entirety of the County's policies concerning the operation of its pension plans in

a 90-minute deposition.  While some period of time on top of this was doubtless appropriate for the County's attorneys to review the related documentation, the merits of this case primarily (indeed, almost exclusively) concern two relatively short, straightforward policy documents: the two interrelated pension plans that the parties have addressed ad nauseam.  (*See* Dkt. 44-3 at 5-60).  And little more could have been gained from "investigating" the plaintiff specifically: the only facts about Mr. Ostrowski of substantial relevance are the facts that he retired from the Lake County Sheriff's Department by reason of line-of-duty disability in 2003, that he has received monthly pension payments with a cost-of-living adjustment since that time, and that he signed the Settlement Agreement in 2017 to resolve unrelated litigation.  (*See, e.g.,* Dkt. 47 at 8-12 [County's statement of material facts on summary judgment]).  None of this has ever been contested, and all of it has always been in the County's possession.

Unlike a plaintiff's attorney, who may be required to distill complaints voiced by his or her client into the pertinent facts and then, from those facts, generate a legal theory (if one is available), this case came to the County's attorneys already focused.  The plaintiff's operative complaint (Dkt. 12) is only eight pages long and makes exceedingly clear both the factual and the legal basis underlying his claims.  While rational minds can differ about how those facts apply to the established legal standards, since day one neither the facts nor the appropriate legal standards have been in doubt here.  The time spent on the County's initial investigation and research is, simply put, not reasonable.

Documentary Discovery

The County also appears to have spent approximately 66 hours propounding and responding to various forms of documentary discovery in this case: 13.4 hours conducting third-party discovery (Dkt. 72-1 at 14, 19, 28-29, 35, 42-43, 48-50); 8.45 hours reviewing the plaintiff's employment file (*id.* at 39-31, 35-37); 12.75 hours propounding documentary discovery to the plaintiff (*id.* at 28-29, 37, 43,

48-49); and 31.3 hours responding to the plaintiff's discovery requests (*id.* at 28-30, 35-37).  This, too, is not justifiable.

The third-party discovery conducted by the County's attorneys served no purpose at all.  As explained at greater length in the plaintiff's partial objection to the County's Bill of Costs, seeking information from third parties—doubtless duplicative of informational already in the County's possession—was never going to result in useful information.  (*See* Dkt. 77 at 4-5).  It should hardly come as a surprise, therefore, that it did not do so.  So too with counsel's review of Mr. Ostrowski's employment file: the (limited) pertinent information—that Mr. Ostrowski retired by reason of disability in 2003 and has received a monthly pension since that time—was always known to the County and was doubtless shared during the initial "investigation" conducted by the County's attorneys.

The County then spent more than a dozen hours propounding documentary discovery requests to the plaintiff.  It propounded 15 interrogatories, but not a single one of these was specific to this case.  Instead, the County sought generic information—Have you ever been arrested? Have you ever been a party or witness in a legal proceeding? Detail each and every item of damage? Have you recorded any conversations with the defendants? Do you keep a diary or journal?—that were doubtless copied from interrogatories that counsel has propounded in countless other proceedings.  (*See* Dkt. 48-2 at 106-23).  Its 28 enumerated document requests are scarcely any better.  While some of these requests do reference items of specific relevance to these proceedings, even these requests almost entirely seek information already in the County's possession.  (*See id.* at 124-41).  Preparing these documents simply should not take a day and a half.  And 30 hours to respond to the plaintiff's limited documentary requests is likewise unreasonable.  The plaintiff propounded no interrogatories or requests for admission but instead propounded only a single request for production of documents, which consisted of only eight (largely overlapping) categories of information, although several had

17

subcategories.[3]  This was appropriate given the narrow issues presented by this case and the lack of any potential factual dispute.  Collecting responsive documents is a client's responsibility, not an attorney's—but even were that not the case it is difficult to imagine that any responsive documents had not been collected during counsel's initial "investigation."  Surely drafting the actual response to such a simply document request should not take 30 hours.

Mr. Ostrowski's Deposition

Mr. Ostrowski's deposition was conducted on December 13, 2019.  (Dkt. 48-2).  Even though this case has never resolved around disputed issues of fact and Mr. Ostrowski's primary form of damages are also subject to rote mathematical computation (*see* Dkt. 45 at 24-26), the County's attorneys appear to have spent approximately 80 hours preparing for and conducting this deposition (which lasted 4.5 hours).  (Dkt. 72-1 at 55-63).  Included in these hours are numerous entries reflecting the "editing" of an "outline" and multiple vague entries from multiple attorneys indicating that they were both "preparing" for Mr. Ostrowski's deposition.  After all this, the County's factual submission on summary judgment relied on Mr. Ostrowski's deposition almost exclusively for the limited purposes of demonstrating that he received benefits as a disabled officer (and the timeline when he became eligible for these benefits) and that he had previously advocated for a cost-of-living adjustment to his benefits.  (Dkt. 47 at 14-17).  All of these were undisputed facts that were in the County's possession even before this litigation was initiated.

The time spent by the County's attorneys preparing for Mr. Ostrowski's deposition is, again, excessive.  *See, e.g.*, *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1263 (D. Kan. 2017) (58.5 hours to prepare for and take *eight* depositions), *appeal pending*, No. 17-3159 (10th Cir.); *Houston v. Hyatt Regency Indianapolis*, No. 1:12-cv-0328-WTL-DML, 2015 WL 13779129, at *2 (S.D. Ind. Feb. 11, 2015) (4.2 hours preparing for three depositions); *Cashman v. Ricigliano*, No. 3:02 CV 1423 MRK WIG, 2005 WL

---

[3]        The document request propounded by the plaintiff is attached to this filing as Exhibit 1.

2234502, at *3 (D. Conn. Apr. 6, 2005) (3.0 hours preparation to take a 5.5-hour deposition, including travel and final preparation); *Lintz v. Am. Gen. Fin., Inc.*, 87 F. Supp. 2d 1161, 1168 (D. Kan. 2000) (16.7 hours to prepare for and take deposition); *Langdon v. Drew Mun. Separate Sch. Dist.*, 512 F. Supp. 1131, 1136 (N.D. Miss. 1981) (18.1 hours to prepare for and conduct multiple depositions).   No meritorious argument to the contrary may be mounted.

The County's Deposition

The deposition of the County's Rule 30(b)(6) designate was conducted on February 27, 2020. (Dkt. 44-2).  As noted, the transcript is only 82 pages long and the deposition thus lasted only an hour or two.[4]  Nonetheless, the County's attorneys appear to have expended between 55 and 60 hours *preparing* for this deposition.  (Dkt. 72-1 at 68-75).  This is so even though the vast majority of the deposition consisted of undersigned counsel simply confirming the operation of the pension plans at issue in this litigation (*see generally* Dkt. 44-2)—facts about which the deponent was already doubtless familiar given that his company has overseen the operation of the plans since the 1970s (*see* Dkt. 44-2 at 2).  Suffice it to say spending a week and a half preparing for a 90-minute deposition is, again, grossly excessive.  *See, e.g.*, *Sergeant v. Acol*, No., 2018 WL 276431, at *6 (D. Md. 2018) (unreasonable to spend 42.6 hours preparing for a deposition that lasted under four hours); *cf. Daniels v. Jenson*, No. 2:11-cv-00298-JCM-CWH, 2014 WL 12784428, at *2 (16 hours preparing and defending deposition).

Summary Judgment

In total, the County spent 118.6 hours preparing its consolidated response to the plaintiff's summary-judgment motion and memorandum in support of its own summary-judgment motion. (Dkt. 72-1 at 88, 92-95).  The process of *editing* this brief alone appears to have begun on June 9, 2020

---

[4]     The precise beginning and ending times of this deposition were not recorded in the transcript. Nonetheless, Mr. Ostrowski's deposition began (on page 6) at 9:54 a.m. and the first break occurred (on page 70) at 11:17 a.m.—that is, 83 minutes later.  (*See* Dkt. 77-1 at 3, 19).  Using this as a comparison, it seems likely that the deposition of the County's Rule 30(b)(6) designate lasted approximately 90 minutes.

and taken nearly 70 hours.  (*Id.* at 92-95).  The County devoted two whole pages (and who knows how much time researching or editing) to the plaintiff's claim under the Americans with Disabilities Act (Dkt. 47 at 19-21), itself not unreasonable except for the fact that the plaintiff had consistently acknowledged that—in light of Seventh Circuit precedent—he was not even pursuing that claim before this Court.  (Dkt. 1 at 2, 7-8; Dkt. 12 at 2, 8; Dkt. 45 at 15-16).  By contrast to the County's 118.6 hours, this Court has routinely concluded that between 30 and 40 hours is a reasonable period of time to complete an opening brief in a social security case, which, like a summary-judgment brief, simply requires the articulation of facts supported by the record and the application of established law to those facts.  *See Evans v. Berryhill*, No. 1:17-cv-54, 2018 WL 1581790, at *3 (N.D. Ind. Apr. 2, 2018) (collecting cases).  Cases outside of the social security context conclude that similar amounts of time are reasonable.  *See, e.g.*, *Golden Gate Audubon Soc'y, Inc. v. U.S. Army Corps of Eng'rs*, 732 F. Supp. 1014, 1017-18 (N.D. Cal. 1989) (48.25 hours); *Kauffman v. Schweiker*, 559 F. Supp. 372, 376 (M.D. Pa. 1983) (20 hours).  To say the least, this case, while certainly of profound importance to both parties, has never presented groundbreaking legal issues.

The County was no more efficient in preparing its reply brief, which took an additional 68.6 hours (Dkt. 72-1 at 99-101)—even though the issues had already been briefed once and no additional facts or legal arguments were addressed.  (*See* Dkt. 50).  This equates to approximately 3.5 hours for every single page of the County's reply brief.  The County's request is excessive.

<u>Motion to Strike</u>

On September 3, 2020, another disabled officer filed with this Court a two-page letter supportive of the plaintiff's claims.  This *pro se* filing was clearly not evidence and would never have been considered by the Court as evidence even if the County had taken no action whatsoever in response to the filing (although the plaintiff did suggest that the Court, in its discretion, could choose to treat it as an *amicus* brief and give it whatever consideration—doubtless minimal—the Court deemed

20

appropriate. (Dkt. 51). The County prepared and filed a one-page motion to strike and a two-page reply addressing the plaintiff's contention that the filing could be treated as an *amicus*. The County billed 17.2 hours for this endeavor. (Dkt. 72-1 at 105-08). This includes more than four hours devoted to "analyzing" and "reviewing" the filing, multiple hours devoted to the preparation of a one-page motion, and time billed by *four separate persons* to "review" this Court's two-page order striking the *pro se* filing.

Post-briefing and oral argument

The County's next billing entries, during a period of inactivity in this case, are also unreasonable. (*See* Dkt. 72-1 at 117-28). Billing records indicate that more than an hour was spent reviewing the routine change-of-judge order that issued after Judge Springmann took senior status and that 1.6 hours was spent reviewing the docket even though no further docket activity was taking place.

The County's attorneys then spent 70.1 hours preparing for and conducting oral argument on the parties' cross-motions for summary judgment. (Dkt. 72-1 at 132-35). This Court, of course, allotted each party 15 minutes for argument. (Dkt. 57). In other words, the County's attorneys spent approximately 280 times as long preparing for the argument as this Court had allotted them for the argument itself. Their time included significant time "analyzing" and "reviewing" pleadings that they themselves had drafted and with which they were presumably already familiar, re-researching the issues presented by this litigation, and "strategizing" the argument, and apparently required the involvement of yet more attorneys to participate in this "strategizing." Although adequate preparation for an oral argument is nothing to be scoffed at, surely a 15-minute summary-judgment argument does not require 70 hours to prepare. Courts do not allow anything approaching this much preparation time for an *appellate* argument. *See, e.g.*, *Ustrak v. Fairman*, 851 F.2d 983, 987 (7th Cir. 1988) ("Almost a week's work [that is, 38 hours] is far too much for preparing to argue an appeal in a case involving

21

simple facts, a three-day trial, and legal issues of limited scope and novelty.") (parenthetical omitted); *Cerajeski v. Zoeller*, No. 1:11-cv-01705-JMS-DKL, 2016 WL 771977, at *9 (S.D. Ind. Feb. 29, 2016) ("The Court finds this amount of time [between 60 and 65 hours preparing for *and* presenting oral argument before the Seventh Circuit] to be significantly excessive, especially given that [the arguing attorney] took the lead in drafting both the opening and reply briefs on appeal and, thus, was already well-versed on the relevant issues before oral argument.  The Court finds that 20 hours would have been a reasonable amount of time.") (emphasis omitted).  The County's request is grossly excessive.

*          *          *

In reviewing the overall reasonableness of a fee application, this Court need not engage in a line-by-line examination of a party's billing records.  Instead, it may simply "deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'"  *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citation omitted); *see also Division 1181 Amalgamated Transit Union—N.Y. Emps. Pension Fund v. D&A Bus Co., Inc.*, 270 F. Supp. 3d 593, 624-25 (E.D.N.Y. 2017) (collecting cases announcing similar principles).  In stark contrast to the County's 636-hour fee request, the *Planned Parenthood* case described above—similarly involving the application of low-level scrutiny to undisputed facts but also concerning vitally important issues of abortion law—was litigated *all the way through the United States Supreme Court* (albeit in a summary disposition) in 580 hours.  *See Planned Parenthood of Ind. & Ky., Inc. v. Commissioner*, No. 1:16-cv-00763-TWP-DML, 2020 WL 906273, at *1 (S.D. Ind. Feb. 25, 2020).  Indeed, the attorney primarily responsible for the claim arising under low-level scrutiny, on par with the primary issue in this case, logged only 142 hours (again, through the United States Supreme Court).  *See id.*, 2020 WL 906273, at *3.

Even a cursory review of the case law reveals that actions are routinely litigated all the way through days-long trials in far fewer hours than the County's attorneys have spent on this case (636.2

hours), which, again, consisted of only two depositions and two substantive briefs from each party. For instance, in *Mondry v. American Family Mutual Insurance Co.*, 497 Fed. App'x 603 (7th Cir. 2012), the Seventh Circuit affirmed the district court's conclusion that 140 hours was reasonable in a case that was resolved at a two-day bench trial. *Id.* at 614-15. In *Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778 (E.D. Mich. 2011), the district court concluded that 408 hours of non-appellate work was reasonable in a case that required (a) filing a complaint, (b) engaging in a period of discovery, (c) briefing both a motion to dismiss and a summary-judgment motion, (d) filing or responding to six motions in limine, (e) preparing for trial, (f) trying a six-day trial, and (f) awaiting jury deliberations. *Id.* at 788-91. In *Simovits v. Chanticleer Condominium Ass'n*, No. 96 C 2385, 1996 WL 675778 (N.D. Ill. Nov. 19, 1996), the court concluded that 199.64 hours expended by the plaintiffs' attorney to resolve a factually complicated fair-housing case through a two-day bench trial was reasonable. *Id.*, 1996 WL 675778, at *2; *see also Simovits v. Chanticleer Condominium Ass'n*, 933 F. Supp. 1394, 1397-99 & n.1 (N.D. Ill. 1996) (detailing the record and indicating that the case was resolved at a bench trial). By contrast, in a case that (like this one) was resolved on summary judgment, this Court concluded that 91.9 hours was a reasonable amount of time for an attorney to have spent litigating the merits of a case involving a "substantial" record and numerous "legal and factual issues presented by both parties." *Boxell v. Plan for Group Ins. of Verizon Communications, Inc.*, No. 1:13-CV-089 JD, 2015 WL 4464147, at *8 (N.D. Ind. July 21, 2015).

Against all this, the County contends at least in part that its attorneys' fees were reasonable because the issues to be resolved in this litigation were important to it. (Dkt. 72 at 4-5). But that is true of almost all litigation: many uncomplicated cases and legal issues are of profound importance to the parties themselves, but that fact does not entitle an attorney to spend an unreasonable amount of time completing any task. Rather than parsing each individual time entry, the plaintiff suggests that this Court should impose an across-the-board 85% reduction in the hours expended by the County's

attorneys. Even this seems generous, as the County will still be compensated for, for instance, multiple hours in responding to the *pro se* filing described above. Nonetheless, this brings the total amount of time reasonably spent to 95.4 hours, a number comparable to the number deemed reasonable by this Court in *Boxell* even though that case appears to have required a more substantial record and attention to a greater number of issues.

> 3. <u>In determining a reasonable fee award, this Court may consider Mr. Ostrowski's indigence</u>

Finally, although a party's financial status is not a proper consideration in determining whether a fee entitlement exists, it is a proper consideration in determining the *amount* of a reasonable award. "[S]everal courts of appeals," including the Seventh Circuit, "have ruled that in appropriate circumstances a district court should consider a nonprevailing plaintiff's inability to pay when determining the amount of the attorneys' fees to be awarded against that party." *Alizadeh v. Safeway Stores, Inc.*, 910 F.2d 234, 238 (5th Cir. 1990) (collecting cases) (emphasis omitted); *see also Munson v. Friske*, 754 F.2d 683, 697 (7th Cir. 1985) ("The courts have held that fee awards are an equitable matter, thereby permitting the district court to consider the relative wealth of the parties.") (citation omitted).

Mr. Ostrowski has two sources of income: his monthly pension payments, which have not been increased to account for changes in the cost-of-living in the last eighteen years, and social security disability. (Dkt. 48-2 at 113-14). He is unable to make even minimum payments on his credit card bills; he has been required to refinance his home three times and has no equity remaining; he has been required to refinance his car and has no equity remaining in that either. (Dkt. 77-1 at 9 [30:13 through 32:15]). He has therefore retained a bankruptcy attorney in order to determine "what is the best situation for [him]." (*Id.* [30:5-9]). Clearly he is financially desperate. These unfortunate circumstances, too, can be considered by this Court in determining a reasonable fee award.

**C. Properly calculated, the County is entitled to a maximum of $5,462.63 in attorneys' fees**

Reducing each of the County's attorneys' hours (and their paralegal's hours) devoted to this litigation, and applying the appropriate rates for attorneys practicing in northwest Indiana, results in the following fee calculation:

| | Hours Sought | Reasonable Hours (less 85%) | Reasonable Hourly Rate | Total |
|---|---|---|---|---|
| Ms. Gessner | 340.10 hours | 51.02 hours | $200.00/hr | $10,204.00 |
| Mr. Karwath | 171.20 hours | 25.68 hours | $325.00/hr | $8,346.00 |
| Mr. Yerkes | 31.90 hours | 4.79 hours | $325.00/hr | $1,556.75 |
| Ms. Larson | 93.00 hours | 13.95 hours | $125.00/hr | $1,743.75 |
| | | **95.44 hours** | | **$21,850.50** |

This properly calculated lodestar figure should be further reduced by 75% to account for the fact that only one of the four defendants is even arguably entitled to a fee award—once again, as third-party beneficiaries to the Settlement Agreement, no party other than Lake County may rely on the fee provision of that agreement insofar as they would not be liable were the shoe on the other foot.

This results in a fee award of $5,462.63. Even this, of course, is a substantial figure for a retired police officer who cannot even make minimum payments on his credit card bills. The plaintiff therefore suggests that this figure should be further reduced, in the Court's discretion, to account for his indigence.

## CONCLUSION

The County's fee request should be denied in its entirety. Even if fees are awarded, however, those fees should be reduced dramatically. This Court may wish to simply hold the County's request in abeyance pending the Seventh Circuit's decision in Mr. Ostrowski's pending appeal. Regardless, if fees are awarded, Mr. Ostrowski requests that the execution of any award be stayed until the conclusion of the appeal. (*See* Dkt. 77 at 10).

Gavin M. Rose
ACLU OF INDIANA
1031 E. Washington St.
Indianapolis, IN  46202
Ph:      317.635.4059
Fax:     317.635.4105
<grose@aclu-in.org>

*Attorney for the plaintiff*