UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THOMAS OSTROWSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-00423-RLM |
| | ) |
| LAKE COUNTY, INDIANA, et al. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

On June 7, 2021, Defendants filed their Motion for Attorney's Fees based on the binding settlement agreement ("Settlement Agreement") previously executed by Plaintiff. In that Settlement Agreement, Plaintiff released his claims against Defendants and agreed that Defendants would be entitled to seek their attorney's fees in the event the Settlement Agreement was raised as a defense in a future action brought by Plaintiff. Despite these agreed terms, Plaintiff opposes Defendants' Motion. However, Plaintiff cannot now renegotiate the terms of the Settlement Agreement, and in light of the reasonableness of the fees sought, Defendants are entitled to their attorney's fees.

**I.  The Settlement Agreement Includes An Enforceable Provision Granting Defendants The Right To Seek Their Fees.**

The Settlement Agreement permits Defendants to seek and recover attorneys' fees. Plaintiff disputes that the Settlement Agreement allows Defendants to recover their fees. In his Opposition, Plaintiff incorrectly states that Defendants did not quote the applicable attorneys' fees provision in their Motion. [Doc. 78 at 2]. In fact, the Motion included the complete provision on page two. [Doc. 72 at 2].

Plaintiff asks the Court to rewrite the terms of the fee recovery provision. He argues that it is simply a "reminder" that Plaintiff might be liable for attorneys' fees if he initiated a lawsuit that is

1

"rendered utterly frivolous" by virtue of the release. [Doc. 78 at 2]. The provision does not contain any language which makes it applicable only to claims that are "rendered utterly frivolous." Instead, it provides that Defendants as the prevailing parties "shall be entitled to seek attorneys' fees" from Plaintiff. [Doc. 48-2 at 161]. This is precisely what Defendants have done.

Plaintiff also attempts to distinguish the fee provision in the Settlement Agreement from others that mandate payment of attorneys' fees, and argues that the fees award in this case is not required. Such attempts to distinguish the fee provision in this case are ineffective. The parties agreed that Defendants would be entitled, but not required, to seek their fees. Such terms have been enforced to allow parties to seek and recover their fees. *See, e.g., Salcedo v. Toepp,* 696 N.E.2d 426, 436 (Ind. Ct. App. 1998) (finding that the prevailing party was "entitled" to attorneys' fees based on agreement that such fees "may be added" to any judgment arising out of the underlying contract); *Citibank (S. Dakota), N.A. v. C & S Wholesale Grocers, Inc.,* No. 2:08-CV-224, 2009 WL 688991, at *5 (D. Vt. Mar. 9, 2009) (agreement providing that party "may" make a claim for reasonable attorneys' fees was enforceable and would allow the party to seek them when incurred).

The attorneys' fee provision is enforceable under Indiana law. Plaintiff spends over two pages of his Opposition asserting that the fee-shifting provision is unenforceable as against public policy. [Doc. 78 at 5-7]. Plaintiff cites no binding or even persuasive authority for such a proposition. The argument is contrary to Indiana law. In Indiana, courts have held that, "[t]he purpose of a fee-shifting provision is to make the prevailing party to a contract whole. . . . Thus, in general, fee-shifting provisions will be upheld if enforcement does not contravene this policy." *Walton v. Claybridge Homeowners Ass'n, Inc.,* 825 N.E.2d 818, 825 (Ind. Ct. App. 2005); *see also AM Gen. LLC v. Demmer Corp.,* No. 3:12-CV-00333-WCL, 2014 WL 4979237, at *49 (N.D. Ind. Oct. 6, 2014).

Plaintiff has no explanation or evidence that the provision at issue would contravene this stated policy. Indeed, pursuant to the Settlement Agreement, the parties negotiated a resolution of

2

Plaintiff's prior lawsuit. In exchange for Plaintiff's agreement to release his claims, Plaintiff accepted a monetary payment. Plaintiff need not have entered the agreement and accepted the payment. Also, he certainly could have negotiated that the attorneys' fees provision be removed from its terms. Instead, Plaintiff knowingly entered an agreement to release his claims, and he agreed that the prevailing party would be entitled to seek its fees in the event of a breach of the Settlement Agreement or if the Settlement Agreement had to be raised as a defense to released claims. There is no violation of public policy for two parties to enter such a settlement agreement. There is no violation of public policy when one of the parties to the agreement seeks enforcement of its terms when the other violates the parties' agreement. The Settlement Agreement provides for fee-shifting, and it is enforceable.

## II.   Defendants Are Entitled To Recover Their Fees.

### A.   Fees Incurred By All Four Defendants Are Recoverable.

In his Opposition, Plaintiff repeats a failed argument regarding the Settlement Agreement and maintains that Lake County is the only covered party, so only its fees are recoverable. [Doc. 78 at 7-9]. Plaintiff erroneously states that the Court found the remaining three Defendants to be "third-party beneficiaries" of the agreement. [Doc. 78 at 7 (citing Doc. 58 at 5-6)]. Notably, the Court's Order makes no mention of third-party beneficiaries but relies on the terms of the release, whereby Plaintiff released Lake County and its affiliates, officers, related entities, representatives, etc. [Doc. 58 at 5; Doc. 48-2 at 159]. The Court found that Plaintiff had not presented evidence to overcome the conclusion that the Sheriff, Treasurer, and Pension Committee were "affiliates" or "related entities" of Lake County. [Doc. 58 at 6]. Again, as expressly stated in the Settlement Agreement, Plaintiff released all such entities, which the Court agreed covered all four Defendants. The Settlement Agreement further provides that, in the event "any of the Released Parties" assert the Agreement as a defense to an action brought by Plaintiff, the "prevailing party" shall be entitled to seek its fees. [Doc. 48-2 at 161]. Accordingly, having found that all four Defendants were released parties, the Court

3

entered judgment in this action in favor of all four Defendants, and they are entitled to seek their fees. Therefore, the Court should reject Plaintiff's argument that a fee award should only be allowed to Lake County. Whether or not some of the Defendants are third-party beneficiaries is of no importance with respect to the fee recovery issue. They were released parties and they are the prevailing parties in this litigation. Therefore, all Defendants have the right to enforce the Settlement Agreement and to recover their fees in doing so.

        **B.**        **The Hourly Rates Associated With Defendants' Fee Request Are Reasonable.**

Plaintiff fails to demonstrate that Defendants' requested fees are unreasonable. Defendants' award of fees is to be determined by standards of commercial reasonableness, including the Defendants' willingness to pay and the aggregate costs in light of the stakes of the case and Plaintiff's strategy. *SFG Com. Aircraft Leasing, Inc. v. Montgomery Equip. Co., Inc.*, No. 3:15-CV-314-TLS, 2019 WL 3941120, at *2 (N.D. Ind. Aug. 21, 2019) (citing *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004)). As to the reasonableness of rates, "[a]n attorney should be compensated for the amount he would have earned from a paying client. The attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." *Branham v. Snow*, No. 1:01-CV-0152-JDT-WTL, 2006 WL 1750443, at *2 (S.D. Ind. June 19, 2006) (citing *Mathur v. Bd. of Trustees of S. Ill. Univ.*, 317 F.3d 738, 742 (7th Cir. 2003); *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)).

Defendants have offered detailed records identifying their actual billing rates. Again, defense counsel's actual rate charged and paid by Defendants is presumptively appropriate. In attempting to overcome this presumption, Plaintiff attempts to diminish the experience level of defense counsel to support his argument for a reduction of rates. Plaintiff incorrectly asserts that Mr. Karwath and Mr. Yerkes primarily handle commercial disputes or employment discrimination cases. [Doc. 78 at 11]. Mr. Karwath and Mr. Yerkes have represented clients in hundreds of cases. Mr. Karwath has extensive experience representing governmental entities and in litigating cases involving employee benefits,

4

including pensions.  Mr. Yerkes likewise has appeared in hundreds of cases throughout his career with particular experience in employment disputes and has extensive trial experience.  Plaintiff also misrepresents Ms. Gessner's experience, incorrectly stating that she has only appeared in six cases "resulting in a decision." [*Id.*].  A simple Westlaw search reveals that Ms. Gessner has appeared in cases resulting in fifteen judicial opinions, with far more representations overall.  Plaintiff's inaccurate statements attacking the experience of defense counsel do not provide a basis to challenge the reasonableness of the rates.

Moreover, Defendants are entitled to their choice of counsel in light of the risk posed by the litigation.  As established in Defendants' Motion, Plaintiff's claims, if successful, would have required Defendants to revise their existing pension and benefit plans and implement a COLA adjustment for all eligible recipients – a change that would have imposed a high price tag for the taxpayers of Lake County.  Plaintiff's decision to bring this action and seek such relief – despite the agreed release that he signed – would have been made with knowledge that Defendants would prepare a strong and vigorous defense.  Indeed, Defendants were appropriate to aggressively defend the case, in light of the high stakes it presented and given that a previous settlement and release of all claims did not stop Plaintiff from filing another lawsuit.  Defendants identified defense counsel with identifiable experience in all subject areas needed to pursue an aggressive defense, including civil rights actions, disability discrimination actions, employment discrimination claims, employee benefits and pension litigation, and extensive litigation and trial experience.

Moreover, Plaintiff would have the Court award rates closer in line with rates awarded in cases several years old and stemming only from the Northern Indiana market.  Plaintiff's Opposition cites numerous cases as reference for hourly rates that Plaintiff deems appropriate – rates that were applied in cases dating as far back as 2011, and with the most recent from seven years ago in 2014.  [Doc. 78 at 12].  Notably, however, included in a footnote that spans over a page in length, Plaintiff offered

one example of a 2020 decision awarding higher rates to the ACLU of Indiana. [Doc. 78 at 12-13, n.2 (citing *Planned Parenthood of Indiana & Kentucky, Inc. v. Commissioner*, No. 1:16-cv-00763-TWP-DML, 2020 WL 906273 at *3 (S.D. Ind. Feb 25, 2020))]. In that case, the Court awarded hourly rates of $500 to Kenneth Falk and $425 to Plaintiff's counsel in this case, but Plaintiff asserts that Mr. Falk's rate represents the upper limit for a civil rights attorney in Indianapolis. In comparison, Plaintiff asks the Court to award hourly rates of $325 for Mr. Yerkes and Mr. Karwath and $200 for Ms. Gessner.

Plaintiff ignores the fact that he raised multiple claims alleging employment discrimination, disability discrimination, civil rights claims, and pension claims, and even added a novel theory that purported to assert a violation of Indiana law. These claims involved the interpretation of a number of governmental pension and benefit plans. Plaintiff's counsel is asking the Court to award a lower rate for Mr. Yerkes and Mr. Karwath than was recently awarded for himself, despite the fact that Mr. Yerkes and Mr. Karwath have many more years of experience, including experience in the area of employment discrimination and pension and benefit litigation. *Id.* at *3 (seeking hourly rate of $425.00 for Mr. Rose). Moreover, Plaintiff's counsel seeks a lower rate for Ms. Gessner than he sought for himself at a similar experience level nine years ago. *See Wirtz v. City of S. Bend, Ind.*, No. 3:11-CV-325-RLM-CAN, 2012 WL 589454, at *2 (N.D. Ind. Feb. 17, 2012) (seeking $275 hourly rate for Mr. Rose).

Additionally, Plaintiff seeks a fee award reduction based on his argument that rates should be based only on those found in the Northern Indiana market. However, "[t]he Seventh Circuit has rejected the argument that a district court should automatically reduce an out-of-town attorneys' rates to local rates." *Indiana Fine Wine & Spirits, LLC v. Cook*, No. 1:20-CV-00741-TWP-MJD, 2020 WL 6905311, at *2 (S.D. Ind. Nov. 24, 2020). Oddly enough, Plaintiff himself secured counsel located in Indianapolis, and yet Plaintiff argues that Defendants are not entitled to recover Indianapolis rates to defend the case. Considering the various legal theories asserted by Plaintiff, the high stakes of the

6

litigation, and need for a vigorous, multi-faceted defense in this case, and the relative experience of defense counsel, Defendants' requested hourly rates are reasonable.

### C. The Hours Associated With Defendants' Fee Request Are Reasonable.

Despite Plaintiff's attempt to do so, the Court need not engage in a detailed accounting of billing records spanning two years of work. "[T]he Court need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Cerajeski v. Zoeller*, No. 1:11-CV-01705-JMS-DKL, 2016 WL 771977, at *1 (S.D. Ind. Feb. 29, 2016). *See also Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."); *Sottoriva v. Claps,* 617 F.3d 971, 975 (7th Cir. 2010) (explaining that because "determining what qualifies as a 'reasonable' use of a lawyer's time is a highly contextual and fact-specific enterprise, we have granted wide latitude to district courts in setting awards of attorney's fees, for neither the stakes nor the interest in uniform determination are so great as to justify microscopic appellate scrutiny.").

Defendants submitted detailed descriptions of the work performed, the day on which it was performed, and the number of hours expended. "The inquiry into commercial reasonableness does not require courts to engage in detailed, hour-by-hour review of a prevailing party's billing records." *SFG Com. Aircraft Leasing, Inc.*, 2019 WL 3941120, at *2 (citing *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1027 (7th Cir. 2013) (internal quotation marks omitted)). However, Plaintiff raises objections to the time expended by defense counsel, all of which seek to minimize the complexity of the case, ignore the fact that there were numerous claims asserted under various state and federal laws, and ignore that defense of the case required attorneys with different skill sets including the ability to understand complex pension and benefit plans and understand the various legal issues raised by Plaintiff in his effort to attack the pension and benefit plans.

7

Plaintiff also ignores that the work performed during discovery was not just work that would be needed to prepare the case for summary judgment, but defense counsel had to include the discovery and pretrial work necessary in the event the case was not resolved at the summary judgment stage. As explained in their Motion and herein, Defendants had to perform a vigorous defense of this litigation as the implications of the Plaintiff's claims, if successful, would have an impact on the Defendants beyond the claims of the Plaintiff.

Plaintiff secured the ACLU of Indiana to represent him in this matter, and his counsel made clear in the Complaint that one purpose of this case was to seek a change of Seventh Circuit law. In light thereof, Defendants necessarily conducted research to prepare for arguments regarding the standard of review to be applied and if the law should be changed with respect to the claims being brought, including the ADA claim and the constitutional rights claims, given the Plaintiff's status as a disabled person.

Also, Defendants conducted necessary investigation and interviewed witnesses with potential knowledge regarding the history and structure of the underlying benefit plans. While Plaintiff ultimately chose not to conduct depositions of such witnesses, Defendant necessarily had to gather such background information to properly assess and defend the claims and to prepare their 30(b)(6) witness.

Plaintiff criticizes Defendants' counsel for seeking summary judgment on and allocating summary judgment briefing to respond to Plaintiff's ADA claim, despite the fact that it was not recognized by current Seventh Circuit precedent. However, Defendants sought summary judgment as to all of Plaintiff's claims and necessarily had to make arguments for summary judgment on all claims asserted in the Complaint. Moreover, Defendants would agree that they could have saved this time had Plaintiff not elected to pursue claims lacking a legal basis – but that is not what Plaintiff chose to do. Plaintiff continued to pursue the claim to "preserve his right to appeal," and Defendants

necessarily had to prepare for that possibility and expend time to defend against and seek summary judgment on such claim. How can the Plaintiff be allowed to raise a claim, but then be allowed to criticize the Defendants for seeking summary judgment on that claim?

Plaintiff equally takes issue with the amount of time spent by Defendants on the cross-motions for summary judgment, but Plaintiff ignores the fact that this was not a one-way briefing. Both parties moved for summary judgment, requiring four total briefs. Defendants had to respond to the Plaintiff's motion and brief and that necessarily required more time researching and preparing arguments than had only the Defendants' summary judgment motion been filed. The more complicated cross-motions further support Defendants' fees.

Plaintiff also points to the length of time (and corresponding transcript page length) for the two depositions in this case, but deposition preparation will necessarily require more time than the actual deposition itself. Proper, careful and thorough preparation for depositions make for more effective and often less time-consuming depositions. Plaintiff takes issue with the fact that more than one attorney prepared for Plaintiff's deposition. Yet, Plaintiff fails to mention that both attorneys attended and conducting questioning during Plaintiff's deposition. This was required because Plaintiff brought various claims under different federal laws and even sought to bring a claim under a novel theory under state law. Attorneys of different experience levels and with different subject matter experience were necessary. In any event, most of the deposition-related work was performed by the attorney with the lowest hourly rate (e.g., as to preparation for Plaintiff's deposition, 9.4 hours for Mr. Karwath compared to 31.9 hours for Ms. Gessner).

Defense counsel were required to have experience in all of the practice areas encompassed in Plaintiff's case. They divided the work for the deposition based on such experience. "That multiple attorneys collaborated is not itself an indication of duplicative work." *Wirtz*, 2012 WL 589454, at *3 (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988) ("The use of two (or more) lawyers,

9

which solvent clients commonly pay for because they believe extra help beneficial, may well reduce the total expenditures by taking advantage of the division of labor.")); *Gautreaux v. Chicago Housing Authority*, 491 F.3d 649, 661 (7th Cir. 2007) ("[Using multiple attorneys] allows more experienced, accomplished, and expensive attorneys to handle more complicated matters and less experienced, accomplished, and expensive counsel to handle less complicated ones. Having one lawyer handle all of the work, as the CHA suggests, would not necessarily result in lower costs for the defendant."). Given the multiple claims alleged by Plaintiff, defense counsel shared in the responsibility of deposing Plaintiff in accordance with their individual areas of experience, resulting in efficiencies achieved from division of labor.

Plaintiff equally objects to the number of hours spent preparing for the Rule 30(b)(6) deposition noticed by Plaintiff. Plaintiff noticeably ignores the twelve deposition topics, plus additional subparts, prepared by Plaintiff and for which Defendants necessarily had to raise appropriate objections and then prepare a witness. [Doc. 44-3 at 1-4]. Of course, had Defendants not taken careful time to analyze the topics and identify and prepare an appropriate witness, the parties necessarily would have incurred more in legal costs by way of a discovery dispute. Defendants' deposition preparation time was reasonable. Representing multiple governmental entities in connection with multiple claims relating to activities and actions over a number of years, and going back decades in time, often requires that additional time be spent by defense counsel in order to properly defend the case. The investigation of the background facts, responding to discovery, and the preparation of 30(b)(6) witnesses, all require that counsel meet with current and former governmental actors, often across multiple agencies. In such cases, attorneys must locate and review volumes of documents and try to track down information over many years which span a number of elections and different governmental entities. Defense counsel conducted at least eight witness interviews as part of its initial investigation and attempted to locate several other witnesses, and also reviewed extensive

10

government records to identify relevant documents related to the pension plans and the events in this case.  When the defendant is a government, there are more frequent changes in the people who hold positions of authority and control that bear on the issues raised in a case, particularly compared to defending claims brought in a case against a single private sector entity or an individual.

In sum, Defendants seek a reasonable amount for attorneys' fees incurred in defending this case.  The fact that the successful defense of this case involved attorneys of different experience levels and attorneys with different subject matter experience and knowledge was the result of the various claims brought by Plaintiff.  Plaintiff decided to include claims aimed at changing existing law and novel claims which raised issues of first impression.  Plaintiff's claims raised issues of an inherently complex subject matter and pertained to disability and pension benefits provided to many different types of benefit recipients under a number of different benefit plans and provisions.  Plaintiff is the party who brought state and federal claims relating to disability and pension benefit issues.  Defendants had to have the services of a number of attorneys to properly defend those claims.   Defendants are entitled to seek a fee award based on the terms of a valid settlement and release agreement.  Defendants' attorneys' fees are commercially reasonable based on the high stakes involved in this case, the complexity of the subject matter, Plaintiff's strategies pursued in litigation against which a vigorous and multifaceted defense was needed, and Defendants' willingness to pay the fees incurred.

### III. Conclusion.

In light of the Parties' valid settlement and release agreement, Defendants are entitled to seek attorney's fees, and Defendants have submitted detailed records supporting the fees incurred.  Defendants' fees are reasonable for all the reasons discussed in their Motion and in this Reply, and Defendants respectfully request that this Court enter an Order awarding Defendants their attorneys' fees in the amount of $295,437.00.

Respectfully submitted,

*s/Jackie S. Gessner*
Jackie S. Gessner

Kenneth J. Yerkes
Bart Karwath
Jackie S. Gessner
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana  46204
Telephone:     (317) 236-1313
E-mail:         ken.yerkes@btlaw.com
                bart.karwath@btlaw.com
                jackie.gessner@btlaw.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all counsel of record.

*s/Jackie S. Gessner*